STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND
CROSS-APPELLANT, v. JOSEPH F. GLEDHILL, DEFEND-
ANT-APPELLANT AND CROSS-RESPONDENT.

Argued February 4, 1975—Decided June 10, 1975.

566

*Mr. Ronald B. Sokalski,* Designated Attorney, argued the cause for defendant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Solomon Rosengarten,* Deputy Attorney General, argued the cause for the State (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

KOLOVSKY, P. J. A. D., Temporarily Assigned. These appeals are before us following grant, 66 *N. J.* 325 (1974), of cross-petitions for certification filed by defendant and the State to review the final judgment of the Appellate Division embodied in its opinion reported at 129 *N. J. Super.* 113.

The question presented by the State's petition is whether one who utters a false or forged credit card with intent to damage or defraud another may be prosecuted under *N. J. S. A.* 2A:109-1 (b), a section of the forgery statute, or whether if he uses the forged credit card to obtain goods or services on credit he may be prosecuted only under *N. J. S. A.* 2A:111-43, a section of the act (hereinafter refered to as the credit card act) originally enacted as *L.* 1968, c. 300, now *N. J. S. A.* 2A:111-40 through 51.

That question was one of the issues raised on defendant's appeal from his convictions at a joint jury trial of an indictment (#29-1971) charging unlawful receipt and possession of a stolen credit card, *N. J. S. A.* 2A:111-42 (b), and 18 indictments (#30 and 33 through 49-1971) charging

him with uttering, on 18 occasions between June 30 and July 24, 1971, a forged credit card in violation of *N. J. S. A.* 2A:109–1 (b). The Appellate Division ruled that "one who illegally uses a forged credit card must be prosecuted exclusively under" the credit card act and that under that act "all separate illegal uses of such a card during any six month period constitute one offense." 129 *N. J. Super,* at 116–117.

The primary question presented by defendant's petition for certification involves the propriety of the action taken by the Appellate Division once it had ruled that the prosecution of the offenses charged in the 18 indictments should not have been under the forgery statute.

The Appellate Division rejected defendant's argument that the trial court should have granted his motion to dismiss the 18 indictments. It ruled: (a) that the trial court should have ordered a consolidation of the 18 indictments into one indictment alleging a violation of *N. J. S. A.* 2A:111–43; (b) that since the State's proofs — which the jury by its verdict found to be true — established a violation of *N. J. S. A.* 2A:111–43, the 18 judgments of conviction would be molded into one judgment of conviction under one indictment, amended to allege a violation of *N. J. S. A.* 2A:111–43, and the other 17 judgments of conviction reversed and set aside; and (c) that the cause be remanded for resentencing both on the molded judgment of conviction and on the conviction for possession of a stolen credit card. (The sentence to State Prison originally imposed on the latter conviction was illegal because it was for a term of one year rather than for a maximum and minimum term as required by *N. J. S. A.* 2A:164–17.) Before the parties applied for certification, the trial court resentenced defendant, imposing consecutive terms of two to three years on the count charging unlawful receipt and possession of a credit card and on the count, as molded by the Appellate Division, charging unlawful use of a credit card.

Defendant's primary argument before us is that after his conviction–following a charge to the jury which explained

only the elements of the crime of uttering a forged instrument, *N. J. S. A.* 2A:109–1 (b), the offences alleged in the 18 indictments — the Appellate Division had no power to so amend and consolidate the indictments. Defendant contends that the Appellate Division had made an impermissible "substantive change in the charge against defendant," *cf. State v. Grothmann,* 13 *N. J.* 90 (1953), by substituting an offense not found by the Grand Jury in violation of Article I, paragraph 8 of the New Jersey Constitution which provides in pertinent part:

No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury * * *.

In view of the ultimate disposition of this appeal, we find no need to resolve the constitutional issue thus posed nor the question whether, if constitutionally permitted, the amendment thus made was authorized under our court rules and did not prejudice defendant. See generally: *R.* 3:7–3(a); *R.* 3:7–4; *State v. Wines,* 65 *N. J. Super.* 262 (App. Div. 1961), certif. den. 34 *N. J.* 474 (1961); *State v. Bott,* 53 *N. J.* 391, 402-403 (1969); *State v. Kuske,* 109 *N. J. Super.* 575, 584–5 (App. Div. 1970), certif. den. 56 *N. J.* 246 (1970); Annotation, "Indictment — Amendment," 17 *A. L. R.* 3d 1181, 1239 (1968); *Commonwealth v. Syren,* 150 Pa. Super 32, 27 *A.* 2d 504 (Super. Ct. Pa. 1942); *Commonwealth v. Bruce,* 230 Pa. Super. 507, 326 *A.* 2d 628 (Super. Ct. Pa. 1974).

Defendant also argues here, as he did unsuccessfully in the Appellate Division, see 129 *N. J. Super.* 118–119, that a number of other errors warranting reversal were committed by the trial court. We agree with the Appellate Division that there is no merit to any of these contentions.

We leave for later discussion defendant's final point, his criticism of the sentences imposed following the remand ordered by the Appellate Division, and now consider the issue raised by the State's cross-petition.

A brief summary of the proofs at the trial will be helpful. They show that a renewal Bankamericard in the name of

Albert R. Miller, bearing his account number, was mailed to him on May 19, 1971. He never received, signed or used it. Had he received it, all that would have been required to enable him to use it to obtain money, goods or services on credit would be that he sign the card on the blank line provided for his signature. Without that signature the card could not be used.

Although the card itself is used to transfer the printed name and account number of the cardholder onto the slip or receipt acknowledging that the goods or services were received and the amount charged therefor, the signature on the card is necessary to enable the one furnishing credit to compare it with the signature placed by the customer on the receipt.

On 18 occasions from June 30 through July 22, 1971, the Bankamericard bearing Miller's forged signature was used to obtain goods and services in amounts totalling $972.24 from two restaurants and two motels. On each occasion, the one presenting the card signed the name Albert R. Miller on the receipts for the goods or services furnished on credit. A handwriting expert testified that the 18 signatures were all signed by the same person.

Despite defendant's testimonial denial of any involvement, the State's direct and circumstantial evidence was more than sufficient to support the jury's finding that it was defendant who, on each occasion, had presented the credit card and had signed the name Albert R. Miller to the receipts.

■ Leaving aside for the moment the problem engendered by the enactment of the 1968 credit card statute, it is clear that the proofs established, as the 18 indictments had alleged, violations of *N. J. S. A.* 2A:109–1 (b) which, among other things, makes it a high misdemeanor (for which the maximum permissible punishment is a fine of $2000 or imprisonment for 7 years or both, *N. J. S. A.* 2A:85–6) to utter or publish as true, with "intent to * * * defraud any other person," any false, altered, forged or counterfeited "printed or

written instrument or indorsement, acceptance, transfer or assignment thereof."

■ ■ A credit card is an instrument encompassed within the statutory language "printed or written instrument or indorsement * * * thereof." *N. J. S. A.* 2A:109-1(a). "Forgery 'may be committed in any writing, which, *if genuine,* would operate as the foundation of another's liability or the evidence of his right.' 3 *Underhill, Criminal Evidence* (5th ed. 1957), § 770, p. 1769." [*State v. Berko,* 75 *N. J. Super.* 283, 290 (App. Div. 1962)]. Since indorsement of the named cardholder's signature on the credit card issued by the credit card company is an essential prerequisite to its use, uttering a credit card indorsed with such a forged signature with intent to defraud is a violation of *N. J. S. A.* 2A:109-1 even if that intent is not "carried out to successful accomplishment." 36 *Am. Jur.* 2d, *Forgery,* § 26, p. 695-696 (1968).

■ ■ "A forged instrument is uttered when it is offered as genuine accompanied by words or conduct indicating that it is genuine, without regard to whether it is so accepted." 2 *Wharton's Criminal Law and Procedure,* § 650, p. 441 (Anderson ed. 1957). "It is not necessary to prove that the person intended to be defrauded was actually defrauded." *State v. Jones,* 9 *N. J. L.* 357, 373 (Sup. Ct. 1828).

Here, however, there was evidence that defendant had obtained goods and services by his improper use of Miller's credit card so that the proofs were also sufficient to show a violation of *N. J. S. A.* 2A:111-43, the section of the credit card act which reads as follows:

A person, who, with intent to defraud the issuer, a person or organization providing money, goods, services or anything else of value, or any other person, (a) uses for the purpose of obtaining money, goods, services or anything else of value a credit card obtained or retained in violation of [*N. J. S. A.* 2A:111-42, "credit card theft"] or a credit card which he knows is forged, expired or revoked, or (b) obtains money, goods, services or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card or by representing that he is the holder of a card and such

card has not in fact been issued, violates this subsection and is subject to the penalties set forth in subsection (a) of [*N. J. S. A.* 2A:111-49], if the value of all money, goods, services and other things of value obtained in violation of this subsection does not exceed $500.00 in any 6-month period; and is subject to the penalties set forth in subsection (b) of [*N. J. S. A.* 2A:111-40] if such value does exceed $500.00 in any 6-month period. Knowledge of revocation shall be presumed to have been received by a cardholder 4 days after it has been mailed to him at the address set forth on the credit card or at his last known address by registered or certified mail, return receipt requested, and, if, the address is more than 500 miles from the place of mailing, by air mail. If the address is located outside the United States, Puerto Rico, the Virgin Islands, the Canal Zone and Canada, notice shall be presumed to have been received 10 days after mailing by registered or certified mail.[1]

The fact that both *N. J. S. A.* 2A:109-1(b) and *N. J. S. A.* 2A:111-43 would apply to the conduct of defendant in this case and that the credit card act is a later enactment dealing specifically with offenses stemming from the possession or use of credit cards, does not mandate a conclusion that prosecution under *N. J. S. A.* 2A:109-1(b) is precluded. "Specific conduct may violate more than one statute." *State v. Blount,* 60 *N. J.* 23, 31 (1972).

As we said in *State v. States,* 44 *N. J.* 285, 291-292 (1965):

The mere fact that two statutes overlap in prohibiting the same act does not mean that the later law automatically repeals the earlier one *pro tanto,* or that an alleged offender can only be prosecuted for the more serious offense. Repeals by implication are not favored and it is a cardinal rule of statutory construction that both laws should be given effect if reasonably possible. It is not sufficient merely to show that a subsequent act covers some of the cases encompassed by the earlier one. The legislative intention to repeal must be

---

[1]The applicable penalties for the several offenses are set forth throughout the act by reference to subsections (a) and (b) of section 10 [*N. J. S. A.* 2A:111-49]. An offense subject to the penalties provided in subsection (a) is designated as a misdemeanor, punishable by a fine of not more than $1000 or imprisonment for not more than 3 years or both. An offense subject to the penalties provided in subsection (b) is designated as a high misdemeanor, punishable by a fine of not more than $3000 or imprisonment for not more than 7 years or both.

manifest; the language must admit of no other reasonable interpretation.

\* \* \* \* \* \* \* \*

\* \* \* Relevant practical factors as well as considerations of fair play, and the reasonable expectations of the Legislature and the public relating to control of the conduct proscribed, are permitted to influence the discretion of the proper authority as to the course to be followed. See *State v. Currie*, 41 *N. J.* 531 (1964); *State v. Berry*, 41 *N. J.* 547 (1964).

In the many situations where criminal statutes overlap in prohibiting the same basic act, the proper prosecuting authority in the sound exercise of the discretion committed to him may proceed under either act. *Cf. State v. Reed*, 34 *N. J.* 554, 573 (1961); *State v. Mark*, 23 *N. J.* 162 (1959); *State v. Fary, supra* 16 *N. J.* [317], at p. 323; *State v. Labato*, 7 *N. J.* 137 (1951); *United States v. Garnes*, 258 *F.* 2d 530 (2 Cir. 1958).

The rationale of *State v. States, supra*, has been applied in a number of cases involving overlapping statutes. So in *State v. Covington*, 59 *N. J.* 536 (1971), we ruled that the later enacted bad check statute does not supersede, and preclude prosecution for violation of, the false pretense statute even though the instrument of the fraud is a worthless check. In doing so, we affirmed the ruling of the Appellate Division to that effect, see 113 *N. J. Super.* 229 (1971), and disapproved the contrary ruling of another Part of the Appellate Division in *State v. Morse*, 109 *N. J. Super.* 160 (1970).[2]

[2]The Appellate Division Part which decided *Morse*, also decided, while the appeal to this court in *Covington* was pending, *State v. Johnson*, 115 *N. J. Super.* 6 (App. Div. 1971), the only authority cited by the Appellate Division in the instant case (see 129 *N. J. Super.* 117) for its conclusion that "one who illegally uses a forged credit card must be prosecuted exclusively under" the credit card act. In *Johnson*, the Appellate Division ruled that prosecution for uttering a forged driver's license under *N. J. S. A.* 2A:109-1 was precluded because the subject of forgery of a motor vehicle certificate of registration or a driver's license was also dealt with in the Motor Vehicle Act, *N. J. S. A.* 39:1-1 *et seq.*, the court finding "a legislative intent to deal with forgery of driver's licenses and automobile registrations exclusively under" the Motor Vehicle Act. 115 *N. J. Super.* at 9. We were not asked to review the Appellate Division's decision in *Johnson*.

In *State v. Fary,* 16 *N. J.* 317, 321–323 (1954) and in *State v. Reed,* 34 *N. J.* 554, 570–573 (1961), the illegal conduct of the respective defendants fell within the purview both of sections of the criminal statutes and later enacted sections of the disorderly persons act. We held that the prosecutor, in the exercise of his discretion, could elect to procure an indictment and prosecute for a violation of the criminal statutes.

Similarly, in *State v. Milano,* 94 *N. J. Super.,* 337, 339-340 (App. Div. 1967), the court ruled that a shoplifter could be prosecuted under the general larceny statute, *N. J. S. A.* 2A:119–2, despite a later enactment, *N. J. S. A.* 2A:170–97 through 101, designating shoplifting as a disorderly persons offense and creating various presumptions applicable to prosecutions for that offense.

Before proceeding to a consideration of the 1968 credit card act to ascertain whether it manifests an intent to effect a repeal of the general forgery statute in cases in which the forged instrument is a credit card, we pause to note that a number of other state courts have considered and decided the issue with which we are presented.

The vast majority of jurisdictions have held that the existence of a later enacted credit card statute under which the defendant could have been prosecuted did not preclude prosecution of a defendant obtaining goods by improper use of a credit card under other general provisions of the criminal laws, e. g. the forgery statutes or those making it a crime to obtain goods by false pretenses. *People v. James,* 178 *Colo.* 401, 497 *P.* 2d 1256 (Sup. Ct. 1972); *People v. Couch,* 179 *Colo.* 324, 500 *P.* 2d 967 (Sup. Ct. 1972); *State v. Pearson,* 250 *Or.* 54, 440 *P.* 2d 229 (Sup. Ct. 1968); *State v. Dumont,* 3 *Or. App.* 189, 471 *P.* 2d 847 (Ct. App. 1970); *McDuffy v. State,* 6 *Md. App.* 537, 252 *A.* 2d 270 (Ct. Spec. App. 1969); *Von Hauger v. State,* 252 *Ind.* 619, 251 *N. E.* 2d 116 (Sup. Ct. 1969); *Kindred v. State,* 254 *Ind.* 127, 258 *N. E.* 2d 411 (Sup. Ct. 1970); *People v. Shaw,* 27 *Mich. App.* 325, 183 *N. W.* 2d 390 (Ct. App. 1970); *Mc-*

*Crory v. State,* 210 *So.* 2d 877 (Sup. Ct. Miss. 1968);
*Davidson v. Commonwealth,* 436 *S. W.* 2d 495 (Ky. Ct. App.
1969); *Shriver v. Graham,* 366 *P.* 2d 774 (Okl. Crim. App.
1961); *Vannerson v. State,* 403 *S. W.* 2d 791 (Tex. Crim.
App. 1966); *Clonts v. State,* 42 *Ala. App.* 287, 161 *So.* 2d
155, 158 (Ct. App. 1964); *State v. McCurdy,* 257 *So.* 2d 92
(Fla. Ct. App. 1972); *McConnell v. State,* 298 *So.* 2d 550
(Fla. Ct. App. 1974), *cert.* dism. 301 *So.* 2d 97 (Fla. Sup.
Ct. 1974); see generally, Annotation, "Credit Card — Un-
authorized Use," 24 *A. L. R.* 3d 986, 996 *et seq.* (1969).

In *People v. James, supra,* defendant had used a stolen
credit card to purchase two wigs for $100 and had signed
the cardholder's name to the charge slips. She was convicted
of forgery under the state's general forgery statute. On ap-
peal, she contended, as she had unsuccessfully in the trial
court, that "the existence of the more specific Colorado
statute dealing with the misuse of credit card devices * * *
precludes prosecution under the more general forgery
statute," arguing that

this credit card statute evidenced a legislative intent "to withdraw
from the forgery statute the crime of forging a credit card and put
the charge specifically in the new crime which is set forth in our
[credit card] statute."

In rejecting defendant's contention and affirming her
forgery convictions the court said:

Although the issue presented by this appeal is a matter of first im-
pression in Colorado, there are nevertheless several guides, in this
jurisdiction and elsewhere, to aid us in the resolution of the issue
presented here. It is a familiar rule of statutory construction in this
state that repeals by implication are not favored, * * * and that only
where there is a manifest inconsistency between a later and an earlier
statute will a repeal by implication be held to have occurred. * * *
If two acts of the legislature may be construed so that an incon-
sistency will be avoided, it is our duty to so construe them.

There is also a now well-established principle in Colorado that a
single transaction may give rise to the violation of more than one
statute. * * * In such a situation it is a proper function of the
prosecutor to determine under which of the statutes he wishes to

prosecute. * * * This was the rationale used by the Indiana Supreme Court in determining that it was not improper to prosecute under the general forgery statute rather than the specific credit card statute, where the facts supported a conviction under either. *Kindred v. State,* [254] Ind. [127] 258 *N. E.* 2d 411.

It is also equally well-settled here that enactment of a specific criminal statute does not preclude prosecution under a general criminal statute unless a legislative intent to limit prosecution to the special statute is shown. * * *

In Colorado, the credit card and forgery statutes have as their subject matter two different kinds of criminal transactions. C. R. S. 1963, 40–14–21, the credit card statute, makes it a crime to knowingly use another's credit card to obtain goods, services or property. The question of whether a forgery has been committed is not material to the proof. Our credit card statute would be violated if a person used a credit card to unlawfully obtain goods by signing his own name to a credit sales slip with knowledge that he had no authority to do so, or, if a credit card transaction occurred where the person presenting a card was not required to sign anything. Neither of these two situations, however, would be a violation of this state's forgery statute. Reasonable distinctions can be drawn between the two crimes which are the subject matter of the credit card and forgery statutes, and we therefore hold that the existence of the specific statute regarding the misuse of credit cards does not preclude prosecution or conviction of appellant under the state's general forgery statute. *State v. Dumont,* 3 *Or. App.* 189, 471 *P.* 2d 847; *McDuffy v. State,* 6 *Md. App.* 537, 252 *A.* 2d 270.

We are fortified in our conclusion by the knowledge that by far the majority of state courts faced with this issue have resolved it as we do. [497 *P.* 2d at 1257–1258].

Only in California and Kansas has it been held that where a credit card is involved, then the prosecution must be exclusively under the credit card sections of their penal codes. See *People v. Swann,* 213 Cal. App. 2d 447, 28 *Cal Rptr.* 830 (D. C. App. 1963); *People v. Ali,* 66 Cal. 2d. 277, 57 *Cal. Rptr.* 348, 424 *P.* 2d 932 (Sup. Ct. 1967); *State v. Wright,* 409 *S. W.* 2d 797 (Kansas City Ct. App. 1966).

But those decisions were reached by applying a principle which we have rejected, *State v. States, supra,* 44 *N. J.* at 291 — that a mere showing that a subsequent act covers some of the cases encompassed within an earlier general act limits prosecution to proceedings under the later specific act.

(It should be noted that in apparent response to the court's decision in *People v. Ali, supra,* in 1967 the California legislature adopted a new credit card act which included the following section:

This act shall not be construed to preclude the applicability of any other provision of the criminal law of this State which presently applies or may in the future apply to any transaction which violates this act.

Since the enactment of that section, the California courts have sustained convictions under its general forgery statute of persons who had used a stolen credit card to obtain goods or services and had signed the cardholder's name to the sales receipt. See *People v. Liberto,* 274 Cal. App. 460, 79 *Cal. Rptr.* 306 (Ct. App. 1969); *People v. Cobb,* 15 Cal. App. 3d 1, 93 *Cal. Rptr.* 152 (Ct. App. 1971); *People v. Neder,* 16 Cal. App. 3d 846, 94 *Cal. Rptr.* 364 (Ct. App. 1971); *People v. Gingles,* 32 Cal. App. 3d 1030, 108 *Cal. Rptr.* 744 (Ct. App. 1973). In each case the court ruled that by the enactment of the quoted section, the legislature had intended to overrule the interpretation adopted by the courts in *Swann* and *Ali.*)

█ No legislative history exists with respect to the adoption of the 1968 credit card act, *N. J. S. A.* 2A:111–40 et seq.[3] Its evident general intent was to deal on a broad scale with offenses stemming from the issuance, use, possession or theft of credit cards and in a number of instances to create presumptions available in aid of the prosecution in specified factual situations. *Cf. State v. Covington, supra.*

A gamut of offenses and a number of pertinent presumptions are set forth in the act beginning with that of making false statements to procure the issuance of a credit card,

---

[3]The fact that substantially identical credit card acts were adopted in several other states in the period 1969–1971 would justify an inference that the act was drafted by a representative of the credit card "industry."

*N. J. S. A.* 2A:111-41, and continuing with a number under the broad appellation of "credit card theft," *N. J. S. A.* 2A:111-42.

Proscribed by *N. J. S. A.* 2A:111-43 (quoted above) and *N. J. S. A.* 2A:111-44, respectively, are the fraudulent use of a credit card to obtain goods, services or other items of value and fraudulent conduct by a person authorized by an issuer to furnish money, goods or services upon presentation of a credit card. Also proscribed are the making and embossing of false credit cards, *N. J. S. A.* 2A:111-42(f), the possession by one other than the cardholder of two or more incomplete credit cards with unlawful intent to complete them and the possession of machinery to reproduce purported credit cards, *N. J. S. A.* 2A:111-45, the signing of a credit card without the authority of the cardholder, *N. J. S. A.* 2:111-42 (g) and the knowing receipt of goods obtained by improper use of a credit card. *N. J. S. A.* 2A:111-46. The consequences of the several presumptions created by the act are set forth in *N. J. S. A.* 2A:111-48.

Specifically pertinent to the issue before us are the provisions of *N. J. S. A.* 2A:111-50 which reads as follows:

This act shall not be construed to preclude the applicability of any other provision of the criminal law of this State which presently applies or may in the future apply to any transaction which violates this act, unless such provision is inconsistent with the terms of this act.[4]

The controlling question thus is whether the provisions of the forgery statute are "inconsistent" with the terms of the credit card act; if they are not, then by the express language of the section, prosecution under the forgery statute is not precluded.

In our view, the word "inconsistent" as used in *N. J. S. A.* 2A:111-50 calls for application of the same test

---

[4]The identical paragraph appears in the credit card acts of several states — Florida, Indiana, Kentucky, Oklahoma and Texas. But except in the case of Florida, the provisions were added to the statute subsequent to the dates on which the cases cited from those states were decided.

as is applicable to a determination whether a later statute impliedly repeals an earlier one — is the subsequent statute "plainly repugnant to the former and * * * designed to be a complete substitute for the former," *Goff v. Hunt,* 6 *N. J.* 600, 606 (1951), so that it is impossible to give the two concurrent operative effect?

■ Two statutes are not inconsistent merely because they overlap in prohibiting the same act. Both laws "should be given effect if reasonably possible. * * * The legislative intention to repeal must be manifest; the language must admit of no other reasonable interpretation." *State v. States, supra,* 44 *N. J.* at 291.

■ Applying that test, we are satisfied that the provisions of the forgery statute are not inconsistent with the provisions of the credit card statute section, *N. J. S. A.* 2A:111–43.

As we have noted above, the ingredients of the statutory offenses are not the same. Moreover, the gist of the offense proscribed by the credit card statute, *N. J. S. A.* 2A:111–43, and the conduct which it punishes by the penalties therein provided, are not forgery but the obtaining of money, goods or services by improper use of a credit card. The violation and the penalty provided are the same whatever the reason for the invalidity of the use of the credit card — be it that it was knowingly used by the cardholder or another after it had expired or been revoked or that it was useed by one knowing that it was forged, stolen or otherwise improperly obtained or retained.

The fact that the goods or services were obtained by using a forged credit card does not preclude the prosecutor, in the sound exercise of his discretion from prosecuting for the separate and distinct offense proscribed by *N. J. S. A.* 2A:109–1(b), the uttering or publishing as true of "any such false, altered, forged or counterfeited" printed or written instrument or indorsement.

The conclusion which we have reached accords with that of decisions of two Florida District Courts of Appeal interpreting a section of the Florida credit card act identical

with *N. J. S. A.* 2A:111–50. *State v. McCurdy,* 257 *So.* 2d 92 (Ct. App., 2nd Dist. 1972); *McConnell v. State,* 298 *So.* 2d 550 (Ct. App., 2nd Dist. 1974), *cert.* dism. 301 *So.* 2d 97 (Fla. Sup. Ct. 1974); *Fayerweather v. State,* 303 *So.* 2d 34 (Ct. App., 3rd Dist. 1974).

In *State v. McCurdy, supra,* it appeared that defendant had on six occasions from April 27 to May 5, 1971 forged the signature of another on a credit card charge slip and utilized the credit card to defraud a motel. Six informations charging violations of the state's forgery statute were filed against him. The trial court granted defendant's motion to dismiss the informations ruling that the general forgery statutes were "inconsistent" with the state's credit card act, that the credit card act "governs all unlawful use of credit cards" and that "a forgery of use of a credit card" must be prosecuted under the credit card act so that prosecution under the forgery statute for "uttering a forged credit card charge slip is invalid."

On the state's appeal, the District Court of Appeal of the Second District reversed, saying:

* * * we see nothing inconsistent between the two statutes [the forgery act and the credit card act]. Both relate to forgery and both encompass forgery of a credit card. The mere fact that the general forgery statute embraced in Ch. 831 is broader than the credit card statute embraced in Ch. 817 is no reason for denying a clear field of operation to either, at the election of the State.

We find no specific definition of the word "inconsistent" in the Florida cases — apparently it is considered that the meaning is so well known and accepted as not to require a definition. In our view, "inconsistent" means repugnance or irreconcilable conflict, and "inconsistent statutes" refers to two or more statutes that are contradictory and incapable of being harmonized. See generally 42 *C. J. S.* p. 541.

As a matter of fact the 1967 credit card statute specifically in effect authorized prosecution under the general forgery statute. Sec. 11 of the 1967 Act, brought down in the compilations as F. S. §817.68, F. S. A., provided as follows:

"This part shall not be construed to preclude the applicability of any other provision of the criminal law of this state which presently applies or may in the future apply to any transaction which violates this part, unless such provision is inconsistent with the terms of this part."

By the express terms of this provision, which is still on the books, prosecution under the credit card statute, rather than being exclusive, is made non-exclusive.

Numerous Florida cases illustrate the proposition that where the same act is a violation of two or more separate statutes, prosecution may be had under either or any of them, at the election of the prosecutor. [257 *So.* 2d at 93–94].

*McCurdy* was followed by the same court in *McConnell v. State, supra,* and by the Third District Court of Appeal in *Fayerweather v. State, supra.* Both courts were not persuaded by the opinions of the Fourth District Court of Appeal in *Lore v. State,* 267 *So.* 2d 699 (1972) and *Strada v. State,* 267 *So.* 2d 702 (1972) in which it was held that while the 1967 credit card act did not preclude prosecution under other statutes, the sentences which could be imposed were controlled by the penalty provisions of the credit card act.

Set forth at length in *McConnell v. State, supra,* were the court's reasons for refusing to follow *Lore* and *Strada:*

* * * in *Lore v. State, Fla. App.* 4th, 1972, 267 *So.* 2d 699, our sister court held that a defendant who was charged and convicted under § 817.481, F. S. A. (a previous statute dealing with the unlawful use of credit cards), could not receive a greater sentence than he could have received under the applicable provision of the State Credit Card Crime Act. While upholding the conviction under the prior statute, the court held that its penalty provisions had been superseded by the penalty provisions of the later act. In *Strada v. State,* Fla. App. 4th, 1972, 267 *So.* 2d 702, that court went a step further and held that where the conduct of a defendant convicted under [the forgery statute] constituted a violation of [the 1967 credit card act], the defendant was entitled to be sentenced under the more lenient penal provisions of the latter statute.

We hold that appellant was properly sentenced for the commission of a third degree felony. Since the state has the right to prosecute under either statute, we see no reason why a sentence cannot be entered for a term prescribed by the statute under which the prosecution is maintained. We recognize that our holding appears to conflict with *Strada,* but, with all due respect, we believe the better rule is to permit the state to have the latitude of prosecutorial options. * * * There is nothing in the general forgery statutes to suggest that their penalty provisions have been repealed by the State Credit Card Crime Act. [298 *So.* 2d at 551–2].

The decision in *McConnell* accords with the settled rule applied in this State in cases in which we have sustained convictions under the one of two overlapping statutes which embodied the greater penalty. *Cf. State v. Reed, supra; State v. Fary, supra; State v. Covington, supra.* If prosecution under such a statute is permitted, there is no logical justification for ignoring the penalty provided by the Legislature for a violation thereof.

Although we are satisfied that prosecution and sentencing of defendant under *N. J. S. A.* 2A:109–1(b) were authorized, we question, on the record here, whether it was a wise exercise of prosecutorial discretion to proceed under the forgery statute rather than the credit card act. *Cf. State v. Reed, supra,* 34 *N. J.* at 573; *State v. Johnson,* 67 *N. J. Super.* 414, 422–423 (App. Div. 1961).

But our doubts as to the wisdom of the course chosen does not, in the circumstances of this case, call for a reversal and a remand whose only effect would be to bring defendant to trial on an indictment under the credit card act. The maximum relief to which defendant is entitled is an appropriate modification of the 18 sentences imposed on the 18 forgery convictions.

Defendant was originally sentenced on those 18 convictions: (1) to terms of two to four years on indictments #30, 33 through 41 and 43–1971, each sentence to be concurrent with each other and with the one-year sentence imposed on the conviction on indictment #29–1971 charging unlawful receipt and possession of a stolen credit card (*N. J. S. A.* 2A:111–42(b)); (2) to a consecutive term of one to two years on indictment #42–1971 and to one to two–year terms, each concurrent with the sentence imposed on #42–1971, on each of the remaining indictments #44 through 49–1971. The effective total of the terms so imposed was three to six years.

As the Appellate Division held (129 *N. J. Super,* at 118), since the one-year sentence on indictment #29–1971 did not specify, as required, a maximum and minimum

term, it was illegal and that conviction was properly remanded for resentencing. Pursuant to that remand, the trial court, invoking the settled rule that "upon resentencing, the trial court, in the exercise of its discretion, may replace the illegal sentence with a legal sentence of greater severity," 129 *N. J. Super.* at 118, imposed a sentence on #29–1971 of two to three years. At the same time, the court imposed a consecutive two to three–year sentence on the indictment under *N. J. S. A.* 2A:111–43 as molded by the Appellate Division, thus subjecting defendant to a maximum term of four to six years as compared with the effective total of three to six years theretofore imposed.

 We conclude that under the circumstances of this case that increase was a mistaken exercise of discretion.

## CONCLUSION

We affirm defendant's conviction on indictment #29–1971 and the sentence of two to three years imposed thereon by the trial court after the remand.

We reverse so much of the judgment of the Appellate Division as molded the judgment of conviction on indictment #30–1971 and vacated the judgments of conviction on indictments #33 through 49–1971 and reinstate the original convictions on each of those 18 indictments. We affirm the sentence on the conviction under indictment #42–1971 — one to two years — consecutive to the sentence of two to three years on indictment #29–1971. The sentences imposed for the convictions on the other indictments, #30, 33 through 41, and 43 through 49–1971, are vacated and the sentences on those convictions are suspended.

*For affirmance in part and reversal in part* — Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN and CLIFFORD and Judge KOLOVSKY—6.

*Opposed*—None.