194 N.J. Super. 451 (1984)
477 A.2d 372
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EARL WEIGEL, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1984.
Decided June 14, 1984.
*454 Before Judges MATTHEWS, J.H. COLEMAN and GAULKIN.
Larry R. Etzweiler, Deputy Attorney General, argued the cause for appellant (Irwin I. Kimmelman, Attorney General, attorney).
Raymond R. Trombadore argued the cause for respondents (Raymond R. and Ann W. Trombadore, attorneys).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
The State appeals, pursuant to leave granted, from a judgment of the trial court which dismissed 44 counts of a 100-count indictment insofar as these counts pertained to three of the four indictees, defendants Earl H. Weigel, Atlas Inc., and Angelo Albanese. These counts charged defendants with uttering forged checks as part of a conspiracy illegally to transport and dispose of toxic wastes.
On July 14, 1981, the State Grand Jury returned Indictment No. SGJ-71-80-15(1). This 100-count indictment charged defendants Weigel, Atlas Inc., Albanese, and codefendant Andrew Albanese with: Count 1  conspiracy (N.J.S.A. 2A:98-1, 2 and *455 N.J.S.A. 2C:5-2); Count 2  creating a public nuisance (N.J.S.A. 2A:85-1) (Weigel and Atlas Inc., only); Counts 3, 16, 19, 20  recklessly risking widespread injury (N.J.S.A. 2C:17-2(c)); Counts 17, 18  recklessly risking widespread injury (N.J.S.A. 2C:17-2(c)) (Angelo and Andrew Albanese only); Counts 4 through 10 and 12 through 15  abandonment of hazardous waste (N.J.S.A. 2C:17-2(a)); Count 11  attempted abandonment of hazardous waste (N.J.S.A. 2C:17-2(a)) (Weigel and Atlas Inc., only); Counts 21 through 31 and 33  illegal transportation of hazardous waste (N.J.S.A. 13:1E-9(e)(2)); Counts 32, 34, 35  illegal transportation of hazardous waste (N.J.S.A. 13:1E-9(e)(2)) (Angelo and Andrew Albanese only); Counts 36 through 49  illegal disposal and storage of hazardous waste (N.J.S.A. 13:1E-9(e)(2)); Counts 50 and 51  illegal disposal and storage of hazardous waste (N.J.S.A. 13:1E-9(e)(2)) (Angelo and Andrew Albanese only); Count 52  falsification of a Department of Environmental manifest (N.J.S.A. 13:1E-9(e)(3)); Count 53  forgery (N.J.S.A. 2C:21-1(a)(2)); Counts 54, 55 and 56  uttering a forged instrument (N.J.S.A. 2A:109-1(b)); Counts 57 through 97 and 99  uttering a forged instrument (N.J.S.A. 2C:21-1(a)(3)); Count 98  uttering a forged instrument (N.J.S.A. 2C:21-1(a)(3)) (Angelo and Andrew Albanese only); Count 100  theft and receiving stolen property (N.J.S.A. 2C:20-7). The indictment alleged that these crimes were committed during a 19 month period from January 1, 1979 to July 14, 1981. Union County was designated as the county of venue.
On December 10, 1981, defendants Weigel and Atlas Inc. moved to dismiss Counts 55 through 97 and Counts 99 and 100 insofar as those counts pertained to them. At some later date defendant Angelo Albanese joined in this motion and asked that the same counts be dismissed insofar as they pertained to him. The State opposed the motion.
On January 14, 1982, the matter was argued before the Honorable V. William DiBuono, A.J.S.C. Although Judge DiBuono denied the motion pertaining to Count 100, he declared his inclination to grant the motion as to the remaining counts. *456 Nevertheless, the court reserved decision as to the remaining counts so that it could afford the State the opportunity to submit additional legal memoranda. On January 18, 1982 the State submitted a supplemental memorandum.
After briefing and argument the trial judge ordered that Counts 55 through 97 and Count 99 be dismissed. He denied the motion as to Count 100.
For the purposes of the argument on the motion to dismiss, the facts were uncontroverted. A common factual pattern was present in each of the dismissed counts.
Counts 55 and 56, which alleged conduct committed by defendants prior to the effective date of the penal code, charged uttering a forged instrument in violation of N.J.S.A. 2A:109-1(b). Counts 57 through 97 and Count 99, which alleged conduct committed by defendants after the effective date of the penal code, charged uttering a forged instrument in violation of N.J.S.A. 2C:21-1(a)(3). Both the pre-code and the post-code counts, however, involved the same factual pattern. Defendant Atlas Inc. maintained a checking account. Weigel was an officer and sole shareholder of that corporation and had the authority to draft checks in the corporation's name. Weigel drafted 44 checks, each payable to a fictitious payee. Weigel transferred each of the checks to Angelo Albanese. Albanese endorsed the checks in the name of the fictitious payee and then transferred the checks to the Mi-Way Check Cashing Service. Mi-Way gave Albanese consideration for the checks, and Mi-Way then deposited the checks. The checks cleared, and Mi-Way received consideration for the checks from the account of Atlas Inc. Each of the 44 checks gave rise to a separate count in the indictment.
The indictment contained no allegation that Weigel or his corporation intended to defraud Angelo Albanese, or that Angelo Albanese intended to defraud the Mi-Way Check Cashing Service. The indictment alleged that the parties employed fictitious names for the purpose of injuring or defrauding the *457 State of New Jersey, and as part of their conspiracy illegally to transport and dispose of toxic substances. Actually, these checks were payments to Angelo and Andrew Albanese for their transportation and illegal disposal of toxic wastes given to the Albaneses by Atlas Inc., a licensed toxic waste hauler. It was Angelo Albanese who requested that Weigel draft the checks in the names of fictitious payees.
The State claims that these proofs and other proofs pertinent to the conspiracy would permit the petit jurors to draw an inference that defendants were employing fictitious names as part of an effort to camouflage both their illegal activities and their true identities. The State argues that defendants hoped to avoid the regulations, restrictions, criminal and civil sanctions, and tax liabilities which the State has established for the hazardous waste disposal business.
Defendants contend that "[a]n act of forgery must carry with it some change in the rights, interests or obligations of the parties to it." They argue that since the State was not a party to the check transactions, intent to defraud the State in the manner suggested by it, would not suffice to sustain the charge. They also contend that forgery does not occur where "the use of the fictitious name was known to the maker and requested by the payee." Alternatively, defendants argue that the facts as alleged by the State, if proven at trial, would not suffice to establish that defendants intended to defraud the State of New Jersey; this was an independent reason to dismiss the forgery counts.
The trial judge reached his decision on a basis other than that advanced by defendants. He concluded that the crime of forgery does not encompass the situation in which the maker of a check drafts the check in the name of a fictitious payee. He further concluded that the crime does not encompass the situation in which an endorser endorses the check. In the judge's view, the use of the names of fictitious payees is simply a *458 common commercial practice which renders the check a bearer instrument.
N.J.S.A. 2C:21-1 allows for a broad application of common law forgery by stating that the signature of a "fictitious person" constitutes a violation of this provision. However, case law suggests a much narrower reading of the provision.
The State has the burden of proving scienter. Scienter can be inferred from the actions of the defendant. In State v. Sabo, 86 N.J. Super. 508 (App.Div. 1965), we held that the act of forgery itself implies the intent to defraud regardless of the knowledge of the one who takes the instrument. In Sabo, defendant changed the title of a car to his own name. 86 N.J. Super. at 318. The person the fraud was perpetrated against (the true owner of the vehicle) was not so indirectly involved as the State. In any event, the question of intent is one for the jury to determine. 86 N.J. Super. at 513. Given the facts of this case, the jury could reasonably have decided that defendants had the requisite scienter.
The more pressing question is whether, under the facts in this case, the State is a proper "injured person." Our Supreme Court has held that it is not necessary to prove that the person against whom the fraud is directed has in fact been defrauded. State v. Gledhill, 67 N.J. 565 (1975). If the forger has fraudulent intent, and the writing could have been relied on as legally significant, the crime of forgery is complete. Gledhill involved a party ignorant of the fraud and not one indirectly involved (use of a credit card bearing the name and identification number of A. Miller. Defendant fraudulently signed the card in the name of A. Miller and proceeded to use it as his own). Thus, the forgery may be complete even though the injured person has no knowledge of the action.
The remaining question is whether the State has redress under N.J.S.A. 2C:21-1(a), which provides in part, "a person is guilty of forgery if, with purpose to defraud or injure anyone...." (emphasis added).
*459 Two cases have addressed the question of the State as the injured party. State v. Johnson, 115 N.J. Super. 6 (App.Div. 1971), and State v. Longo, 132 N.J.L. 515 (Sup.Ct. 1945). In both cases, the State had a direct interest in the matter. In Longo, defendants, employees of the Commissioner of Registration and Superintendent of Elections of Hudson County, altered voting records of a prior primary election. The Court explained that voting records are of great interest to the State, and thus, the State was an injured person:
The legislature has, by the election laws, provided for the office of Commissioner of Registration and has provided that the record of votes cast by citizens in primary elections be kept, an incident of which is a notation of the party ballot voted by each such voter. It is the established public policy that such record be kept and that it be kept honestly and accurately. The altering or falsification of such a record is at least prejudicial to and a fraud upon the state. The "person" defrauded, within the meaning of forgery statutes, can be a state, county or other governmental unit. 26 C.J. 905.
It is not necessary to sustain a conviction for forgery, where the forgery is committed upon a public record, that the subject of the forgery should be an instrument upon which a civil suit could be based. Public records are necessarily and essentially different from such instruments as notes, checks, receipts, &c., used in private commercial business. If it be so, as argued by plaintiff in error, that there must be intent to inflict financial damage upon a person in the alteration of a commercial instrument, we do not consider that such rule applies to the alteration of a record or other authentic matter of a public nature. [132 N.J.L. at 519]
In State v. Johnson, the State also had a direct interest in the matter. There defendant was convicted of uttering a forged driver's license in violation of N.J.S.A. 2A:109-1. We held that the "person" defrauded within the meaning of the forgery statute can be a governmental unit. 115 N.J. Super. at 9.
The State relies on State v. Schultz, 71 N.J. 590 (1976), to support the proposition that N.J.S.A. 2C:21-1 expressly proscribes the false making of any endorsement if there is fraudulent intent. Schultz, however, cites with approval the definition of forgery found in State v. Ruggiero, 43 N.J. Super. 156 (App.Div. 1956), which requires a showing that the false writing, if genuine, would or might have some legal effect upon the rights of others. 43 N.J. Super. at 159. In Schultz, a police *460 precinct clerk endorsed a fictitious name on the back of a check received in payment of a traffic violation. The endorsement, while mere surplusage, did have the capacity to affect the rights of others by inducing the person cashing the check to think that the instrument was properly endorsed for cashing purposes. This clearly affected the rights of the municipal court to whom the check was properly payable. The facts in Schultz are clearly distinguishable from the facts presented here. The use of fictitious names as payees on the checks of Atlas Inc. had no potential and no capacity to affect the legal rights of others. The fictitious names were used at the request of the payee and with the knowledge of Atlas Inc., the maker, and Mi-Way, the third party which cashed the check.
The State suggests that the Court in Schultz, left room to include the State as an injured person in a situation such as that presented here because, in dictum, it arguably left room to include the State as an injured party in other circumstances. The Court's citation of The State v. Robinson and Chittenden, 16 N.J.L. 507, 510 (Sup.Ct. 1938), and quotation of the following sentence from that opinion, is offered in support of the State's contention: "The law of [forgery] is to protect the mass of society, and it matters not that a few knowing men are safe."[1] 71 N.J. at 599.
*461 The State also relies on The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission (1971), Vol. II: Commentary at 238-239. We find that this reliance is misplaced. Neither Schultz nor the Commission report indicate that the breadth of the statute would extend to the circumstances at hand. The Commission report merely expands coverage to include "any writing," and explains that knowledge of the "injured party" is no longer an element of the offense. We do not think that Schultz contemplated a reading of its dictum in such an expansive manner as to consider the State an "injured person" where, as here, the State's interest is to trace an accurate record of the source of earnings of individuals.
Defendants contend that the claimed injured person, the State, must have been a party to the check transaction and since the State was not such a party, the counts were properly dismissed. They alternatively contend that the State's proofs are insufficient to demonstrate that the State could properly be regarded as an injured or defrauded person. They also argue that the use of names of fictitious payees is a common commercial practice which has the purpose of transferring the status of the negotiable check from an order instrument into a bearer instrument.
The checks in question were genuine instruments, and were accorded full legal effect by each of the parties who dealt with them. In accordance with long-established commercial usage and in accordance with well-accepted law, they were treated as checks payable to bearer. A check which is made payable to a fictitious or nonexistent person is treated as a check made payable to bearer when the maker of the check knows that the payee is either a fictitious or nonexistent person. Seidman v. North Camden Trust Company, 122 *462 N.J.L. 580 (Sup.Ct. 1939). The trial judge accepted defendant's argument and found that the checks in question were genuine instruments which would be deemed payable to bearer. We agree. The facts clearly indicate that the use of the fictitious name was known to the maker of the check, requested by the payee of the check, and known by the party cashing the check.
This is not to say, however, that defendant's endorsement of a check in the name of a fictitious payee, although negotiable as a bearer instrument, will not give rise to the crime of forgery under the proper circumstances. In pertinent part, N.J.S.A. 2C:21-1 provides:
A person is guilty of forgery if, with purpose to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor ... makes, completes, executes, ... or transfers any writing so that it purports to be the act of ... a fictitious person....
The State argues that, even though no party to the transaction was defrauded, defendants violated both N.J.S.A. 2A:109-1(b) and N.J.S.A. 2C:21-1(a)(3), since these provisions do not require a party to the transaction to be defrauded. It is clear that the injured person need not be a party to the immediate transaction, nor be aware of the fraud. State v. Gledhill, supra, 67 N.J. 565. However, the use of the fiction must have some capacity to injure or defraud another party. The cases cited by the State do not support the proposition that the fictitious endorsement constitutes a forgery even though it does not defraud the person to whom the instrument is eventually passed.
Finally, the State's proofs are insufficient to demonstrate that the State of New Jersey was an injured or defrauded person under N.J.S.A. 2C:21-1. In common parlance, the word "defraud" means to cheat or wrongfully deprive another of his property by deception or artifice. The State's response is that it was the injured party because it might be deprived of knowledge of Angelo Albanese's true identity. In effect, the State is contending that it makes no difference that the document is genuine and can be given full legal effect, so long as it *463 contains false information which the State contends it has a right to know. The State equates "injure or defraud" with "deceive," and claims that it is defrauded or injured by the failure of the defendants to disclose the true identity of the payee.
The Final Report of the New Jersey Criminal Law Revision Commission, supra at 239, defines the requisite falsity of the document:
"Falsity," under existing New Jersey law implies that the writing is "not genuine, fictitious, and not a true writing." ... The falsity must relate to authenticity; a document is not forged merely because it contains extrinsic misrepresentations. MPC P.O.D. 176 (1962); MPC T.D. 11, p. 83 (1960). [citations omitted]
It is clear that neither the authors of the Model Penal Code nor the members of the New Jersey Criminal Law Revision Commission agreed with the approach taken by the State in support of its argument on appeal. The false nature of the writing which is required by N.J.S.A. 2C:21-1 is defined as a falsity which must relate to the authenticity of the document rather than to some extrinsic misrepresentation contained in the document. Furthermore, this court held in State v. Berko, 75 N.J. Super. 283 (App.Div. 1962), that defendant's use of a fictitious name on a check is not a forgery within the meaning of N.J.S.A. 2A:109-1 since it was the name authorized by the bank's signature card, even though the instruments were worthless. Thus, forgery cannot be committed by the making of a genuine instrument, though the statements made therein are untrue. 75 N.J. Super. at 291.
It seems apparent that the State has confused the effect of the making and uttering of the checks in question as substantive crimes with respect to it, instead of regarding them as probable evidence of a conspiracy by defendants to evade other laws. We do not suggest here that the State cannot use the checks in question as evidence to prove the existence of the alleged conspiracy.
Affirmed.
*464 GAULKIN, J.A.D., concurring in part and dissenting in part.
I would reverse the order under review insofar as it dismisses the charges brought under N.J.S.A. 2C:21-1(a)(3); I join my colleagues in affirming the dismissal of the charges under N.J.S.A. 2A:109-1(b), although for somewhat different reasons than those expressed in the majority opinion.
The proofs relied on by the State in support of each count are straightforward. Weigel, acting on behalf of Atlas, Inc., issued a check payable to a fictitious payee. Weigel gave the check to Angelo Albanese in payment for services rendered. Albanese endorsed the check with the name of the fictitious payee and negotiated it at Mi-Way Check Cashing Service. Mi-Way deposited the check and the Atlas, Inc. account was duly charged. At trial the State would offer proofs that these transactions were designed to facilitate defendants' illegal transportation and disposal of toxic substances by camouflaging their activities and identities. The principal issue before us is whether those allegations, if proved, would establish a violation of N.J.S.A. 2C:21-1(a)(3).
a. Forgery. A person is guilty of forgery if, with purpose to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
(1) Alters or changes any writing of another without his authorization;
(2) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act or of a fictitious person, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
(3) Utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2).
"Writing" includes printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege, or identification.
There seems no dispute that the State has made a sufficient proffer that the checks were "writings," that defendants "uttered" or aided and abetted the uttering of the checks (N.J.S.A. 2C:2-6) and that the checks were endorsed and transferred as the purported act of a "fictitious person." The only remaining *465 question is whether defendants could be found to have acted "with purpose to ... injure" or "with knowledge" that they were "facilitating a[n] ... injury."
That an unlawful disposal of toxic material works an "injury" to the public is self-evident. Indeed, the 18 counts of the indictment charging defendants with such disposals are brought under N.J.S.A. 2C:17-2, which prohibits "causing or risking widespread injury or damage" (emphasis supplied).
Yet my colleagues appear to conclude that the State cannot prove "injury" because the State's interest is "to trace an accurate record of the source of earnings of individuals" and that the State cannot be considered an injured person. Ante at 461, 462. That view misperceives the charges. The State does not, and need not, allege any specific injury to itself; the "injury" which is at the heart of the charges is not merely the State's loss of "an accurate record," but the public's wrongful exposure to hazardous waste. Accordingly, I find unavoidable the conclusion that, if the State can prove that defendants uttered any check drawn to and endorsed by a fictitious person with purpose to injure anyone or knowledge that they were facilitating such an injury, the elements of forgery under N.J.S.A. 2C:21-1 will have been established.
The caselaw relied upon by the majority does not support, much less compel, any other conclusion. Those cases were decided under N.J.S.A. 2A:109-1 or its predecessors. In keeping with the early pattern of American forgery statutes which focused on documents "having special legal or commercial significance" (Final Report of the New Jersey Criminal Law Revision Commission, vol. II, at 238 (1971)), N.J.S.A. 2A:109-1(a) prohibited only a "false" making or alteration of public documents or "any printed or written instrument or endorsement, acceptance, transfer or assignment thereof." That limited scope of the statute required our courts to make nice distinctions as to the nature of the instrument, the nature of *466 the asserted falsity, the legal efficacy of the document and the legal liability of the parties or holders of the instrument.
The technisms of N.J.S.A. 2A:109-1 are apparent in State v. Schultz, 71 N.J. 590 (1976), the most recent expression on the statute from our Supreme Court. There Schultz had taken a check payable to the Jersey City Municipal Court, endorsed it with a fictional name, and cashed it at the Bergen Bar. This court set aside Schultz's forgery conviction because the endorsement in the fictitious name was "worthless" and "did not have any legal effect upon the apparent negotiability of the instrument." Id. at 597. The Supreme Court reversed, finding that while the endorsement was "legally imperfect," a person to whom the check was offered "might well assume that the individual endorsement ... was that of a person authorized to negotiate the check on behalf of the court." Id. at 599. In reaching that conclusion, the Court recited with approval the holding of State v. Ruggiero, 43 N.J. Super. 156, 159 (App.Div. 1956), aff'd 25 N.J. 292 (1957), that forgery is committed where the false writing "if genuine would, or on its face might be, of some legal effect upon the rights of others...." State v. Schultz, supra, 71 N.J. at 598.
The charges brought here under N.J.S.A. 2A:109-1 thus require a determination whether a check to the order of and endorsed in the name of a fictional person is "falsely made" and whether such falsity might be "of some legal effect upon the rights of others." Where a drawer of a check makes it payable to a person whom he knows to be fictitious, he is deemed to intend that the fictitious payee "have no interest in the instrument," and accordingly an endorsement by any person in the name of the named payee is effective. N.J.S.A. 12A:3-405(1); U.C.C. § 3-405(1)(b) comment 3, illustration a (1977).[1] If, as *467 the State contends, Weigel knew that the payee was a fictitious person, the "legal effect" is that the fictitious person had no interest in the check and Albanese was authorized to endorse the check in the name of the fictitious person. I agree with my colleagues that such a check is not "falsely" made or endorsed and that the use of the fictional name in the manner alleged by the State has no "legal effect upon the rights of others." For those reasons, I agree that Counts 55 and 56 of the indictment, which charge violations under N.J.S.A. 2A:109-1, were properly dismissed.
N.J.S.A. 2C:21-1, however, "broadens the coverage" of the crime of forgery. Final Report of the New Jersey Criminal Law Revision Commission, vol. II, at 238 (1971). Now all sorts of "writings" may be the subject of forgery without regard to their legal or commercial significance and the statute specifies what is to be deemed false. Ibid. We need not explore the "legal effect" of a writing, nor need we ponder whether a check knowingly drawn to the order of a fictitious person is a "false" writing. As applied to the present case, N.J.S.A. 2C:21-1 requires only a showing that the defendants uttered a "writing" payable to and endorsed by a fictitious person "with purpose to defraud or injure anyone, or with knowledge that [they were] facilitating a fraud or injury to be perpetrated by anyone...." For the reasons I have stated, I am entirely satisfied that the State's proffered proofs would be sufficient to sustain charges under N.J.S.A. 2C:21-1.
Accordingly, I join with my colleagues in affirming the dismissal of Counts 55 and 56, but I would reverse the dismissal of Counts 57 through 97 and Count 99.
NOTES
[1] The quotation from The State v. Robinson and Chittenden in Schultz is actually taken out of context. The quoted sentence is preceded by the following:

The alteration makes the note purport on the face of it to be made by the New York bank, and tends to charge them with the payment of the money. It is not only altered and circulated with that false design, but had its false effect on Mr. Munn, who honestly gave good money in full for it, and was calculated to impose in like manner upon multitudes of other people. Nice observers might detect the falsification by holding it up to the light, but that does not justify the forgery. The law is to protect the mass of society, and it matters not that a few knowing men are safe. Let us next consider what grounds there are for the motion in arrest of judgment. [16 N.J.L. at 510]
See also Rohr v. State, 60 N.J.L. 576, 582 (E. & A. 1897). The sentence is less broad when taken in context.
[1] Section 9(3) of the Uniform Negotiable Instruments Law defined as bearer paper any instrument "payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable."