KINDRED v. STATE OF INDIANA.

[No. 369 S 46. Filed May 19, 1970. No petition for rehearing filed.]

Ralph M. Foley, Foley & Foley, of Martinsville, for appellant.

Theodore L. Sendak, Attorney General, William F. Thompson, Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by affidavit with the crime of forgery. Upon his plea of not guilty, trial was had by

the court. Defendant was found guilty and sentenced to not less than two nor more than 14 years in the Indiana State Reformatory. The body of the affidavit under which the appellant was charged reads as follows:

"H. Fred Neal being duly sworn, upon oath says, that in and at the County of Morgan, in the State of Indiana, on or about the 28 day of March, 1968 that one JAMES KINDRED did unlawfully and feloniously forge the name of Ellis Early to a Midwest Bank Card Form for the purpose and with the intent of obtaining fifty ($50.00) dollars in cash from the Indiana Bank and Trust Company of Martinsville, Indiana. Said Midwest Bank Card Form being in words and figures following (H.I.)

contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Indiana."

Appellant filed a motion to quash, the overruling of which he assigns as error in this cause.

Appellant points out that Burns Ind. Stat., 1956 Repl., § 10-2102, the statute describing the crime of forgery, sets forth 46 specific items which may be the subject of forgery. It is appellant's contention that this being a criminal statute it should be strictly construed, and that the maxim *"expressio unius est exclusio alterius"* should apply in determining legislative intent, and that in making the application of this maxim the State cannot include the forgery of a bank card or charge account.

Appellant further argues that inasmuch as there is a specific statute providing penalty for the misuse of a credit card, the same being Burns Ind. Stat., 1956 Repl., § 10-2130 *et seq.,* the State should be required to prosecute under that statute and should not be permitted to prosecute under the forgery statute. This Court has recently had occasion to pass on essentially the same question in the case of *Von Hauger* v. *State* (1969), 252 Ind. 619, 18 Ind. Dec. 641, 251 N. E. 2d 116. In that case the appellant had unlawfully used a credit card and was charged by the State under the Offenses Against Prop-

erty Act. He claimed that the State should only be permitted to prosecute him under the statute specifically providing a penalty for the misuse of the credit card. In that case this Court stated:

> "When a person commits acts which constitute the violation of more than one criminal statute, the State has the option to charge and prosecute under any or all of the statutes which have been violated."

As to appellant's claim that the maxim *"expressio unius est exclusio alterius"* applies, we would call attention to the following portion of the forgery statute:

> "Whoever falsely makes * * * any order, warrant or request for the payment of money, * * * or any other instrument in writing, with intent to defraud any person, body politic or corporate, or utters or publishes as true any such instrument or matter, knowing the same to be false, * * *"

In the case at bar the appellant forged the name of one Ellis Early on a Midwest Bank Card in the presence of State's witness, Marie W. Bennett. By so doing he obtained $50 in cash from the Indiana Bank and Trust Company, Martinsville, Indiana. We hold that such action on the part of the appellant is specifically covered by the foregoing language. We see no doubtful meaning in the language of the statute. Therefore, the maxim attempted to be invoked by the appellant is not applicable. 26 I. L. E., *Statutes*, § 119.

The evidence in this case most favorable to the State discloses:

One Gaston Nutter testified that he operated a clothing store in Martinsville. On the 26th day of March, 1968, the appellant, James Kindred, entered his place of business and picked out a number of items of clothing, including a yellow jacket. James Kindred tendered a credit card bearing the name of Ellis Early and in the presence of Mr. Nutter signed a card with the name of Ellis Early, which card bore the imprint of the credit card number.

Marie W. Bennett testified that she was an employee of the Indiana Bank and Trust Company of Martinsville, Indiana. On the 28th day of March, 1968, a person who looked like the appellant entered the bank, presented himself as Ellis Early and presented a credit card in order to obtain $50 in cash. She testified that this person was dressed in a new yellow jacket and that in her presence he signed the name of Ellis Early on a card containing the imprint of the credit card.

The evidence discloses that the credit card used in Mr. Nutter's store was the same credit card which was used two days later at the bank.

A handwriting expert, Douglas Buck, from the Indiana State Police Department, testified that a known sample of handwriting of the appellant had many marked similarities to the handwriting of the person who wrote the name of "Ellis Early" in Mrs. Bennett's presence at the bank.

Appellant next contends the trial court erred in allowing Marie W. Bennett to testify to the identity of the appellant where she had first observed him in the police station at an informal lineup before the appellant had obtained or been pointed counsel. Appellant cites *U. S.* v. *Wade* (1967), 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 to support this contention. An examination of the record fails to disclose any objection made by the appellant which would bring this case within the *Wade* case. The only objections found in the record concerning the admissibility of Mrs. Bennett's testimony are as follows:

"Q. Do you know who presented you with this credit card and requested this money?

"A. Well he said he was Ellis Early, but he wasn't.

"MR. BLUE: Well, now your Honor, I will object— I don't think—

"MR. BRAY: I think she can tell whether she knows it is Ellis Early or not.

"A. Well, it wasn't Ellis Early.

"MR. BLUE: Well, now Your Honor, I will move once again to strike it and ask a preliminary question of this witness.

"BY THE COURT: You may ask.

"MR. BLUE: Do you know Ellis Early?

"A.  I do,—now.

"MR. BLUE: But you didn't then?

"A.  No.

"MR. BLUE: Your Honor, I will move to strike the the answers—she couldn't possibly,—

"MR BRAY: Why Your Honor—she says she knows him now.

"BY THE COURT: I will overrule your objection Mr. Blue.

"THE DEFENDANT HAVING MADE AN OBJECTION HEREIN, AND THE COURT NOW OVERRULING SAID OBJECTION, TO WHICH RULING OF THE COURT THE DEFENDANT EXCEPTS.

"Q.  Is the—do you know if the person who signed this and was given that money is in the court room at this time?

"A.  Well, it looks like Mr. Kindred."

It is fundamental that in order to preserve a question for this Court to review on appeal there must be an objection in the court below to the evidence submitted. *Lewis* v. *State* (1969), 252 Ind. 454, 18 Ind. Dec. 337, 250 N. E. 2d 358.

In the *Wade* case counsel moved for a judgment of acquittal or alternatively to strike the bank official's court room identification on the ground that the manner in which the line-up had been conducted violated his constitutional rights against self-incrimination and his right to counsel. In the case at bar no such objection or motion was made. We also point out parenthetically that Mrs. Bennett never did make positive identification of the appellant either at the police station or during the trial.

Appellant next alleges the trial court erred in allowing evidence of an alleged similar offense without first requiring

the State to present a *prima facie* case of the alleged similar offense. To support this contention appellant cites *Watts* v. *State* (1951), 229 Ind. 80, 95 N. E. 2d 570 and *Todd* v. *State* (1951), 229 Ind. 664, 101 N. E. 2d 45. In the *Watts* case this Court stated:

> "The general rule in Indiana for the admission of evidence of separate, independent, and distinct crimes, in establishing the guilt of a defendant, is that such evidence is inadmissible except to show intent, motive, purpose, identification, or a common scheme or plan."

In the case at bar the appellant had objected to the testimony of one Gaston Nutter that two days previous to the commission of the alleged crime the appellant had entered his clothing store, picked out certain items of clothing and presented a credit card in payment for the supposed purchase. The sales slip for this purchase was introduced in evidence and is shown to bear the imprint of the same credit card which was used to obtain the $50 at the bank from Mrs. Bennett. Mr. Nutter further testified that one of the items obtained by the appellant in his store was a yellow jacket. Mrs. Bennett had testified that the person resembling appellant who had obtained the money from her was wearing a new yellow jacket. It thus becomes quite apparent the purpose for the introduction into evidence of the testimony of Mr. Nutter and the sales slip showing the number of the credit card used in that transaction was to identify the appellant.

Mr. Nutter made a positive court room identification of appellant as being the person who had obtained, among other items of clothing, a yellow jacket from him by the use of the same credit card which two days later was presented to Mrs. Bennett at the bank by a person whom she testified looked like the appellant and who was wearing a new yellow jacket. This evidence also tended to show a scheme and plan on the part of the appellant to use the credit card to obtain merchandise and money in the local community. The use of such evidence to show a definite plan,

system and scheme is authorized under the *Watts* case. In that case, at page 103, this Court, quoting from *Smith* v. *State* (1939), 215 Ind. 629, 21 N. E. 2d 709, stated:

> " 'Where the circumstances surrounding the offenses other than that charged are of a similar nature, showing use of similar or peculiar instrumentalities in the commission of each offense, or employment of a uniform scheme or method, evidence of such offenses is both relevant and material and is admissible as having probative force to prove the defendant guilty of the particular crime charged.' "

The appellant cites the *Todd* case, *supra,* to support his claim that the court erred in permitting Mr. Nutter to testify when there had been no *prima facie* case of forgery established as having occurred in Mr. Nutter's store. We are in total agreement with the holding in the *Todd* case; however, we see no parallel to the case at bar. The specific language in the *Todd* case is found at page 673 as follows:

> " 'Evidence of other crimes should appear to be substantial, and at least make out a prima facie case before it is admissible. If the evidence of another crime only amounts to a suspicion, it should not be received.' "

In the case at bar we see nothing vague or uncertain about the forgery committed in Mr. Nutter's store. The appellant appeared, presented himself as Mr. Early, presented a credit card with Mr. Early's name thereon and forged his name to the sales slip to obtain clothing. The State could hardly have presented evidence which more succinctly described a *prima facie* case of forgery. We therefore hold that the *Todd* and *Watts* cases are ample authority for the admissibility of the testimony of Mr. Nutter.

Appellant also alleges error on the part of the trial court in admitting samples of handwriting, the same being State's Exhibit 3, which were used by the handwriting expert to incriminate the appellant. It is claimed and in fact the evidence shows that these samples of handwriting

were obtained from the appellant during an investigation for a different but similar crime than the one charged and at a time when he was not represented by counsel. The appellant had freely and willingly given the handwriting samples to the Sheriff of Morgan County. We feel this question has been answered by the Supreme Court of the United States in the case of *Gilbert* v. *California* (1967), 388 U. S. 263, 18 L. Ed 2d 1178, 87 S. Ct. 1951:

> "The taking of the exemplars did not violate petitioner's Fifth Amendment privilege against self-incrimination. The privilege reaches only compulsion of 'an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers,' and not 'compulsion which makes a suspect or accused the source of "real or physical evidence". . . .' *Schmerber* v. *California,* 384 U. S. 757, 763-764, 16 L. Ed. 2d 908, 916, 86 S. Ct. 1826. One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection. *United States* v. *Wade, supra,* at 222-223, 18 L. Ed. 2d at 1154, 1155. No claim is made that the content of the exemplars was testimonial or communicative matter. Cf. *Boyd* v. *United States,* 116 U. S. 616, 29 L. Ed. 746, 6 S. Ct. 524.

> "*Second.* The taking of the exemplars was not a 'critical' stage of the criminal proceedings entitling petitioner to the assistance of counsel. Putting aside the fact that the exemplars were taken before the indictment and appointment of counsel, there is minimal risk that the absence of counsel might derogate from his right to a fair trial. Cf. *United States* v. *Wade,* 388 U. S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926. If, for some reason, an unrepresentative exemplar is taken, this can be brought out and corrected through the adversary process at trial since the accused can make an unlimited number of additional exemplars for analysis and comparison by government and defense handwriting experts. Thus, 'the accused has the opportunity for a meaningful confrontation of the [State's] case at trial through the ordinary processes of cross-examination

of the [State's] expert [handwriting] witnesses and the presentation of the evidence of his own [handwriting] experts.' *United States* v. *Wade, supra,* at 227-228, 18 L. Ed. 2d at 1158."

Under the above authority, we hold there was no error in the admission of State's Exhibit 3.

Appellant claims that the State failed in its burden of proof in that the evidence disclosed that Mr. Early had notified the credit card company of the loss of the credit card, and that the company had voided the card. It is appellant's contention that since the card had been invalidated in such manner the appellant could not be guilty of the crime of forgery, citing 14 I.L.E., *Forgery,* § 2. An examination of this authority reveals that "* * * an instrument which is manifestly void is not the subject of a forgery." One of the authorities cited for the above statement is *State* v. *Hazzard* (1907), 168 Ind. 163, 167, 80 N. E. 149. The Court in that case stated:

"While it is true that a forged instrument must disclose upon its face that it is of some legal effect, nevertheless it will be sufficient if the legal validity thereof be apparent only, and not real."

In the case at bar there was nothing on the face of the credit card used by the appellant to indicate that it had been voided and the sales slip which bore the forged name, together with the imprint of the credit card, in no way indicated invalidity. There is no evidence that the bank had any knowledge that the credit card had been lost by the rightful owner or that it had been voided by the issuing company. The fact that it had been voided is not sufficient to relieve the appellant of his conviction of the charge of forgery under the authorities cited.

Judgment of the trial court is affirmed.

Hunter, C.J., and Arterburn, J., concur; DeBruler, J., concurs in result; Jackson, J., dissents without opinion.

NOTE.—Reported in 258 N. E. 2d 411.