STATE, Respondent, v. CHABONIAN, Appellant.

*No. State 1. Argued September 12, 1972.—Decided October 3, 1972.*
(Also reported in 201 N. W. 2d 25.)

724

For the appellant there was a brief by *Coffey, Lerner and Murray,* attorneys, and *William M. Coffey,* of counsel, all of Milwaukee, and oral argument by *William M. Coffey.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J.   Only the issues cognizable under sec. 974.06 (1), Stats., are before the court:

"[Whether] the sentence was imposed in violation of the U. S. Constitution or the constitution or laws of this state, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack . . . ."

Defendant's initial contention is that the trial court was without jurisdiction to accept the guilty plea. It is contended that the testimony of the defendant in support of the guilty plea showed a defense to the charge. It is argued that therefore the plea was unacceptable and that the court was without jurisdiction to accept the plea and subsequently to impose sentence.

Although the issue of jurisdiction can be raised under sec. 974.06, Stats., the defendant's contention that the trial court lacked jurisdiction in this matter is without merit.

"Criminal jurisdiction of the subject matter is a power of a court to inquire into the charge of the crime, to apply the law, and to declare the punishment in the court of a judicial proceeding and is conferred by law." *Pillsbury v. State* (1966), 31 Wis. 2d 87, 94, 142 N. W. 2d 187.

The defendant was accused of a felony. He was an adult, appearing before the circuit court, which had subject matter jurisdiction of the crime charged (sec.

252.03, Stats.). The defendant was physically before the court:

> "Personal jurisdiction in a criminal case attaches by an accused's physical presence before the court pursuant to a properly issued warrant, a lawful arrest or a voluntary appearance, and continues throughout the final disposition of the case." *Kelley v. State* (1972), 54 Wis. 2d 475, 479, 195 N. W. 2d 457.

Since there has been no objection timely made to the personal jurisdiction of the defendant, no defect in that respect can be claimed. While the failure to elicit a knowledgeable and voluntary plea would be error and entitle a defendant to a reversal, the court in the instant case had jurisdiction to accept the plea and impose sentence.

The defendant raises the claim that the plea was involuntarily and unknowingly made. A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford* (1970), 400 U. S. 25, 31, 91 Sup. Ct. 160, 27 L. Ed. 2d 162. When a guilty plea is coerced or is otherwise involuntary, it is subject to attack as a denial of due process. *Boykin v. Alabama* (1969), 395 U. S. 238, 89 Sup. Ct. 1709, 23 L. Ed. 2d 274; *Herman v. Claudy* (1956), 350 U. S. 116, 76 Sup. Ct. 223, 100 L. Ed. 126. Thus, a constitutional deprivation is arguably posed by the defendant's claim that his statements at the time the guilty plea was entered showed that the facts before the court were insufficient to sustain a conviction on the guilty plea.

At the arraignment on April 24, 1967, the defendant was represented by counsel. At the outset, the judge asked the defendant whether the guilty plea was being entered with his full knowledge and consent, whether any threats or promises had been made to induce a plea of guilty, and whether he understood that a possible sen-

tence of ten years' imprisonment could be imposed. To each question, the defendant gave the answer appropriate to the acceptance of the guilty plea. Thereafter, a police officer was called to testify in support of the state's prima facie case.

Officer O'Brien testified that he and his partner had been dispatched to a parking lot structure, where there had been reports of strange noises in the building. As they drove into the driveway of the parking lot, an automobile, driven by the defendant Chabonian, attempted to leave the premises. The automobile was stopped, but Chabonian was not questioned, for at that time Officer O'Brien's partner announced that the office door was open and someone was inside. Chabonian was permitted to leave, and the police officers immediately entered the parking lot office, where they found two individuals, the Hergan brothers, attempting to open the office safes. They were arrested, and Chabonian was picked up a short time later.

According to the testimony of O'Brien, Chabonian admitted that he had met the two safecrackers at a bowling alley. Chabonian told the officers that, prior to the arrival at the parking lot, the other two men told him they were "going to knock off the Avenue Parking lot office." Chabonian remained at the scene while the two Hergan brothers removed the pane of glass from the office window. There was testimony that Chabonian earlier in the evening had agreed with the Hergans to enter the parking lot premises.

Chabonian took the stand in support of his plea of guilty. He stated that, just before they got to the scene of the crime, the brothers told him that their intention was to burglarize the parking lot. The following exchange took place between the defendant and his counsel:

"Q. What did they tell you?

"*A.* I asked—I said where are we going. They said, 'We are going to go over there and rob the parking lot,' or whatever it is.

"*Q.* And you readily went along with them, right?

"*A.* Right. I went along with them."

Chabonian then stated, in response to his counsel's question, that he had remained there for five or ten minutes when the thought occurred to him, " 'What the hell am I doing here?' So I proceeded to leave."

On the basis of this testimony at the defendant's arraignment, the contention is now made that the defendant had never expressly or impliedly given his consent to the commission of this crime and that, in any event, he made a timely withdrawal from the course of criminal conduct.

The law applicable to the taking of this plea, in 1967, is set forth in *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295. Therein this court held that, although it was error to accept a guilty plea when it has not first been determined by the trial judge that the plea was voluntarily and intelligently made, nevertheless, where counsel is present:

"Courts have the right to assume in such a situation that counsel has fulfilled his duty of proper representation by fully explaining to the accused the nature of the offense charged, the range of penalties, and possible defenses thereto, and satisfying himself that the accused understands such explanations, before permitting the accused to authorize the entry of a plea of guilty." *Strickland, supra,* page 631.

This presumption satisfies the requirements that the plea be made knowledgeably and voluntarily.

In *Hanes v. State,* ante, pp. 72, 75, 197 N. W. 2d 802, and *Gibson v. State* (1970), 47 Wis. 2d 810, 819, 177 N. W. 2d 912, this court stated that the *Strickland* presumption applies to defendants who were

convicted before the effective date of *Boykin v. Alabama,* *supra.* To overcome this presumption, a defendant in the position in which Chabonian now finds himself has the burden of establishing that the plea was involuntary and without proper understanding. *Burkhalter v. State* (1971), 52 Wis. 2d 413, 417, 190 N. W. 2d 502; *Drake v. State* (1969), 45 Wis. 2d 226, 229, 172 N. W. 2d 664. That showing must be substantiated by clear and convincing evidence. *Gibson, supra,* page 820. The testimony at the arraignment is relied upon to make this showing.

The defendant construes the testimony to show that he made a timely withdrawal and that, accordingly, the evidence elicited at the hearing raised an arguable defense and, hence, the trial court erred in accepting the plea. Under the *Strickland* presumption, however, and where, as here, the defendant was represented by competent counsel, the court may assume that the merits of the possible defense of withdrawal were discussed by defendant and his attorney and that only after a consideration of the likelihood of the success of such a defense was the plea of guilty entered.

The recent case of *North Carolina v. Alford, supra,* is instructive. Alford was charged in a court of North Carolina with the crime of first-degree murder. On the advice of counsel, Alford pleaded guilty in exchange for the reduction of the charge to second-degree murder. Before the plea was accepted, a hearsay presentation was made by the state of circumstantial evidence tending to show the defendant's guilt. Alford, however, took the stand and testified that he had not shot the victim but was pleading guilty only to avoid the possible death penalty under the first-degree-murder charge. The United States Supreme Court concluded that a conviction based on the guilty plea alone would have been invalid since Alford's protestations of innocence indicated a fac-

tual and legal dispute with the state's charge. The court, however, did not rest on the guilty plea alone. It pointed out that an express admission of guilt is not a constitutional requisite for conviction. The supreme court said:

"Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt. Here the State had a strong case of first-degree murder against Alford. Whether he realized or disbelieved his guilt, he insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading . . . . When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the judge could test whether the plea was being intelligently entered . . . its validity cannot be seriously questioned. In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it." (Pp. 37, 38.)

In *Alford,* the court concluded that, when there is strong evidence of actual guilt, the conviction will be sustained even against a defendant who, having pleaded guilty, nonetheless denies the factual basis for guilt.

In the instant case, there was no denial of guilt at the time the plea was accepted. There was a strong factual foundation for guilt, and only now, four years after the conviction, is there posed the contention that there was an arguable defense. We are satisfied that under these circumstances there was no denial of due process and no unknowing plea, even though the record made then reveals an arguable defense. The *Strickland* presumption satisfies the constitutional requirement that

the possible defense was discussed and rejected after consultation with counsel.

In addition, the testimony as restated above shows overwhelming evidence of the defendant's guilt. There was evidence indicating defendant's voluntary assent to assist the Hergans in committing the crime. He acknowledged that he knew of the plan and his role in the burglary prior to the arrival at the parking lot. After acknowledging that he knew what the Hergans were up to, Chabonian replied affirmatively to his counsel's question, "And you readily went along with them, right?" At the scene of the break-in, he agreed that he would "rev up" the engine to sound an alarm if anyone came. He admitted that he stayed at the scene for five to ten minutes. The testimony of the police officer indicated that, when Chabonian was stopped as he was leaving the scene, the entry had already been made and the Hergans were in the office attempting to peel open the safes.

Although the testimony is unequivocal that the defendant voluntarily abandoned the Hergan brothers, there is strong evidence to show that the crime of burglary, *i.e.*, the breaking and entering with intent to commit the felony, had been committed prior to the defendant's physical withdrawal from the scene. Whether the defendant is viewed as an aider and abettor or as a conspirator, there is compelling evidence to show that his complicity was complete prior to the alleged withdrawal.

The trial court committed no error, in light of the strong evidence of guilt, in accepting the defendant's plea of guilty. The trial court had jurisdiction to accept the plea and to impose the sentence. The defendant has demonstrated no grounds upon which relief can be granted pursuant to sec. 974.06, Stats.

*By the Court.*—Order affirmed.