Mack, Plaintiff in error, v. State, Defendant in error.

Supreme Court

*No. 77–238–CR.  Argued October 10, 1979.—*
*Decided January 8, 1980.*
(Also reported in 286 N.W.2d 563.)

For the plaintiff in error there were briefs and oral argument by *Ben Kempinen,* Legal Assistance in Inmates Program, of Madison.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J.   On June 13, 1977, the circuit court denied the postconviction motion of the plaintiff in error, Lawrence Mack (hereinafter the defendant) brought pursuant to sec. 974.06, Stats. 1977.   The defendant pleaded guilty to the charge of forgery pursuant to sec. 943.38 (1), Stats. 1975, and to a charge of attempted theft on November 12, 1975.   The postconviction motion and this writ of error challenges only the forgery conviction.

The principal question presented for review is whether the co-existence of the forgery and credit card crimes statutes violates equal protection either facially or as applied.   We conclude that they do not and affirm.

The facts in this case are not disputed.   On August 7, 1975, Brian DeRoche's wallet was stolen from his jacket, which was hanging in his office at work.   In the stolen wallet was a Master Charge credit card issued in his name.   The defendant obtained possession of the card from a man known to him only as "Bilbo."   Bilbo acquired this and other cards from O. C. McMurray.   McMurray was to receive twenty-five percent of the total value of all purchases made with the credit cards.

The defendant, Mack, used the credit card to purchase four tires from a General Tire Service store in Milwaukee.   The store manager sold the tires to Mack, each having a retail value of $100.41, the total purchase price coming to $417.71.   In order to complete the purchase Mack signed both a store sales invoice and the Master Charge credit slip with the name "B. N. DeRoche."   At no time did he have Mr. DeRoche's consent to use the card.   An employee of the store observed him sign the Master Charge slip.   The transaction took place on

August 7, 1975, the same day that the wallet was stolen from Mr. DeRoche. The store manager loaded the tires into the trunk of a 1973 Cadillac belonging to a friend of the defendant.

Later that day, the defendant attempted to purchase a diamond ring valued at $890 from the Lebolt & Company Jewelry Store in Wauwatosa. The salesman at the store was presented with the card belonging to Mr. DeRoche for payment of the ring, and contacted the Master Charge company to obtain verification for the purchase. By that time, Mr. DeRoche had contacted the credit card company and informed them of the theft. The salesman was informed by the company that the card was stolen. Mack then left the store, excusing himself for the purpose of making a phone call and was apprehended shortly thereafter by the police.

The defendant admitted that he used the credit card to purchase the tires from the General Tire store which were recovered from the Cadillac, as were four other tires purchased with the same credit card from a Firestone store. The defendant was charged with forgery under sec. 943.38(1), Stats. 1975, for forging the name of Mr. DeRoche on the Master Charge sales slip at the General tire store. He was also charged with attempted fraudulent use of a credit card in the Lebolt & Company incident and with the attempted theft of a diamond ring from a Gimbels Department store. Finally, he was charged with the fraudulent use of a credit card belonging to Terrence R. Watts, used in an attempt to purchase a pair of shoes from a Thayer McNeil Shoe Store in Milwaukee.

After preliminary examination and bindover on the forgery charge, the defendant, who was represented by retained counsel, entered a plea of not guilty. The defendant's counsel and the assistant district attorney discussed and finally agreed upon plea bargain in respect to the four pending charges. The defendant agreed to

plead guilty to the forgery and attempted theft charges in exchange for the district attorney's promise to dismiss and "read in" the two charges of attempted fraudulent use and fraudulent use of a credit card. The district attorney was to recommend imprisonment on the forgery charge and was to make no recommendation as to the attempted theft charge.

In accordance with this agreement, the defendant withdrew his plea of not guilty and entered a plea of guilty to the forgery and attempted theft charges. The circuit court examined the defendant and was satisfied that the plea was made voluntarily, freely and with full understanding of the potential penalties. After establishing a factual basis for the plea, through the testimony of the defendant and detective Gerald Wrobelewski of the Milwaukee Police Department, the plea was accepted by the court. A pre-sentence investigation report was ordered to aid in sentencing. On January 8, 1976, the defendant was sentenced to not more than five years in the state prison on the forgery conviction and was given a concurrent two year sentence for the attempted theft conviction.

The motion for post conviction relief alleged that the prosecutor was required to charge the defendant with the fraudulent use of a credit card under sec. 943.41 (5) (a) 2, Stats., rather than the crime of forgery. It was also alleged that if the district attorney had the discretion to charge forgery or a violation of the credit card crimes statute, the constitutional principles of separation of powers and equal protection were violated.

The scope of judicial review under sec. 974.06, Stats., is quite narrow and precludes all claims except those expressly enumerated. They are:

"[Whether] the sentence was imposed in violation of the U. S. Constitution or the constitution or laws of this state, . . . the court was without jurisdiction to impose

such sentence, or . . . the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack. . . ." *See, State v. Chabonian,* 55 Wis.2d 723, 725, 201 N.W.2d 25 (1972).

The general rule applied in Wisconsin is that a guilty plea, voluntarily and understandingly made constitutes a waiver of nonjurisdictional defects and defenses including claims of violations of constitutional rights prior to the plea. *Foster v. State,* 70 Wis.2d 12, 19, 233 N.W.2d 411 (1975); *Hawkins v. State,* 26 Wis.2d 443, 448, 132 N.W.2d 545 (1965); *See, also, Lefkowitz v. Newsome,* 420 U.S. 283, 288, 95 S. Ct. 886, 43 L. Ed.2d 196 (1975); *Tollett v. Henderson,* 411 U.S. 258, 93 S. Ct. 1602, 16 L. Ed.2d 235 (1973).[1] To try a person for a criminal offense, the trial court must have jurisdiction over the person of the defendant and over the subject matter. Jurisdiction over the subject matter is derived from law and cannot be waived nor conferred by consent. *State ex rel. La Follette v. Raskin,* 30 Wis.2d 39, 45, 139 N.W. 2d 667 (1966).

The first claim made by the defendant is that the trial court had no subject matter jurisdiction over the charge of forgery on the facts in this case. Because subject mat-

---

[1] *Compare, Menna v. New York,* 423 U.S. 61, 96 S. Ct. 241, 46 L. Ed.2d 195 (1975) and *Blackledge v. Perry,* 417 U.S. 21, 30–31, 94 S. Ct. 2098, 40 L. Ed.2d 628 (1974). In *Blackledge* it was held that a state, after having chosen to proceed with a misdemeanor charge, could not under the Due Process Clause charge the defendant with a felony upon exercise by the defendant of his right to a trial de novo on appeal. The entry of guilty plea to the felony charge did not bar him from raising the constitutional claim on habeas corpus. *Menna v. New York* held that a double jeopardy claim was not waived by entry of a guilty plea stating "[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction be set aside even if the conviction was entered pursuant to a counseled plea of guilty." 423 U.S. at 62.

ter jurisdiction is nonwaivable, it may be raised by appeal or by a motion under sec. 974.06, Stats.

Criminal subject matter jurisdiction is defined as the power of the court to inquire into the charged crime, to apply the applicable law and to declare the punishment in a court of a judicial proceeding. The power is one conferred by law. *Kelley v. State,* 54 Wis.2d 475, 479, 195 N.W.2d 457 (1972) ; *Pillsbury v. State,* 31 Wis.2d 87, 94, 142 N.W.2d 187 (1966). A court has subject matter jurisdiction where it has been authorized to hear and determine the primary object of the action. *Galloway v. State,* 32 Wis.2d 414, 420, 145 N.W.2d 761 (1966).

The circuit courts in Wisconsin are courts of general jurisdiction. They have original subject matter jurisdiction of all matters, civil and criminal, not excepted in the constitution or prohibited by law. *Dumer v. State,* 64 Wis.2d 590, 595, 219 N.W.2d 592 (1974). At the time of the defendant's guilty plea and conviction, the Wisconsin Constitution, Article VII, sec. 8 provided:

"**Circuit Court, Jurisdiction.** SECTION 8. The circuit courts shall have original jurisdiction in all matters civil and criminal within this state, not excepted in this constitution, and not hereafter prohibited by law; and appellate jurisdiction from all inferior courts and tribunals, and a supervisory control over the same. They shall also have the power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and all other writs necessary to carry into effect their orders, judgments and decrees, and give them a general control over inferior courts and jurisdictions."

Sec. 252.03, Stats. 1975, provided:

"252.03. **Jurisdiction of circuit courts.** The circuit courts have the general jurisdiction prescribed for them by the constitution and have power to issue all writs, process and commissions provided therein or by the stat-

utes, or which may be necessary to the due execution of the powers vested in them. They have power to hear and determine, within their respective circuits, all civil and criminal actions and proceedings unless exclusive jurisdiction is given to some other court; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carry into effect their judgments, orders and other determinations, subject to reexamination by the supreme court as provided by law. . . ."

If the criminal complaint is defective, or if the defendant is convicted under an invalid law, the conviction itself is not void. The circuit court still has subject matter jurisdiction to render its judgment. Even where the error in the law or proceedings is fatal to the prosecution, the circuit court has the power to inquire into the sufficiency of the charges before the court. *See, for example, Murphy v. Miller Brewing Co.*, 50 Wis.2d 323, 327, 184 N.W.2d 141 (1971) ; *see also, State v. Chabonian,* 55 Wis.2d 723, 201 N.W.2d 25 (1972) ; *State v. Kuecey,* 60 Wis.2d 677, 211 N.W.2d 453 (1973) ; *State v. Asfoor,* 75 Wis.2d 411, 424, 249 N.W.2d 529 (1977).

The failure to charge any offense known to law has also been termed jurisdictional. *Champlain v. State,* 53 Wis.2d 751, 754, 193 N.W.2d 868 (1972) ; *State v. Lampe,* 26 Wis.2d 646, 648, 133 N.W.2d 349 (1965). *See also, United States v. Doyle,* 348 F.2d 715 (2d Cir. 1965). "A complaint which charges no offense is jurisdictionally defective and void and the defect cannot be waived by a guilty plea, the court does not have jurisdiction." *Champlain v. State, supra,* at 754.

But this is not a case where no crime was alleged. The defense that the forgery statute cannot be applied on these facts is not a claim which can be asserted on a sec. 974.06, Stats., motion after a guilty plea is entered.

The defendant argues that the credit card crimes statute, sec. 943.41, Stats. 1977, acts as implied repeal of the more general forgery statute when applied to conduct involving credit cards. Thus, he argues, no offense was alleged in the complaint. This is not correct. As was pointed out in *State v. Lampe, supra,* at 648, the question raised there was "whether the information charge[d] *any* offense." (Emphasis added.) The criminal complaint and information in the case at bar properly alleged the crime of forgery. The circuit court determined that the forgery charge was proved beyond a reasonable doubt. No objection was raised to the personal jurisdiction over the defendant. The circuit court had subject matter jurisdiction as conferred by the Wisconsin constitution and statutes to accept the guilty plea.[2] *See, Peterson v. State,* 54 Wis.2d 370, 381, 195 N.W.2d 837 (1972) ; *Smith v. State,* 85 Wis.2d 650, 661, 271 N.W.2d 20 (1978).

In *Flores v. State,* 69 Wis.2d 509, 510, 230 N.W.2d 637 (1975), the defendant sought to challenge on equal protection grounds the validity of the criminal statute under which he was convicted. He had pleaded guilty to the charge and the constitutional challenge was made by motion for postconviction relief. This Court said:

"Although because of his guilty plea defendant has no right to raise constitutional objections here, we nevertheless choose to consider the question in the interest of justice because there are no factual issues that need resolution."

In this case, since there are no factual questions, the parties have fully briefed the issue and because of the

---

[2] Support for this conclusion is found in sec. 971.31(2), Stats. 1977. There it is stated that defenses and objections based on defects in the complaint, information or indictment and the invalidity in whole or in part of the statute on which the prosecution is founded must be raised before trial by motion or be deemed waived. Likewise, a guilty plea will waive these objections, as well.

statewide importance of the subject matter, we choose to consider the constitutional questions presented.

The defendant asserts that the coexistence of the general forgery statute and the credit card crimes statute is violative of the equal protection clause of the Constitution. U.S. Constitution Amend. XIV, Sec. 1. The contention is that whenever a credit card is used fraudulently the class of offenders created is sufficiently discernable to require substantially similar treatment for all persons in that class. The prosecutor, it is asserted, will have unbridled discretion to choose which statutory provision to apply. The forgery statute at the time of the guilty plea carried a maximum penalty of ten years imprisonment and a fine of $5,000. The specific provision of the credit card crimes statute alleged to apply in this case carried a maximum penalty of one year in the county jail and a $1,000 fine. Secs. 943.38(1); 943.41(8), Stats. 1975.

Legislative enactments are presumptively constitutional and the court will sustain a statute against attack if there is any reasonable basis for the exercise of the legislative power. *Dane County v. McManus*, 55 Wis.2d 413, 423, 198 N.W.2d 667 (1972); *State v. Asfoor*, 75 Wis.2d 411, 440 249 N.W.2d 529 (1977). If the classification is irrational or arbitrary, equal protection of the law is denied and the law creating that classification must be stricken. *State v. Asfoor, supra,* at page 440.

The legislative decision to make credit card crimes punishable to a lesser degree than forgery is a rational one. Forgery is a crime aimed at safeguarding confidence in the authenticity and genuineness of documents relied upon in business transactions. W. LaFave, A. Scott, Jr., *Criminal Law* §90 (1972); *See also, Little v. State,* 85 Wis.2d 558, 562, 271 N.W.2d 105 (1978).

Credit card crime legislation resulted from the difficulty in prosecuting the wide variety of fraudulent uses

of credit cards under existing provisions of the penal laws. R. Perkins, *Criminal Law,* p. 318 (1969). The classification of these two offenses separately, with separate penalties for each is clearly rational. It is a legislative decision, and is not an arbitrary or discriminatory classification that denies equal protection.

The defendant seems to argue that it was discriminatory to prosecute him under the forgery statute while others are prosecuted under the credit card statute. There is no merit to this contention. "To avoid prosecution for a criminal offense on equal protection grounds it must be shown that the failure to prosecute was selective, persistent, discriminatory and without justifiable prosecutional discretion." *State v. Johnson,* 74 Wis.2d 169, 174, 246 N.W.2d 503 (1976). There has been no showing of factual discrimination in the record to indicate that an abuse of prosecutorial discretion has occurred. *See, Locklear v. State,* 86 Wis.2d 603, 611, 273 N.W.2d 334 (1979).

Finally, the defendant argues that the forgery and credit card crimes statutes proscribe the same conduct, therefore without the establishment of legislative guidelines the prosecutor has unlimited discretion to select which statutory provision to proceed under. The decisions in *United States v. Batchelder,* 442 U.S. 114, 99 S. Ct. 2198, 60 L. Ed.2d 755 (1979) and *State v. Karpinski,* 92 Wis.2d 599, 285 N.W.2d 729 (1979) together resolve the issue raised here.

*United States v. Batchelder, supra,* considered and rejected an equal protection argument similar to the one asserted in the case at bar, where the defendant was prosecuted under one of two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968. The penalty provisions under the Act contained substantially different punishments for, what in many cases, would be identical conduct. However, the statutes were

construed not to be co-extensive. The elements of each crime were different, although only slightly.

In *State v. Karpinski, supra,* a constitutional challenge was made where the defendant's conduct could have been punished under a state criminal statute or as an ordinance violation in a civil action. We held that the prosecutorial discretion vested in the District Attorney was not a *per se* violation of equal protection. (p. 616).

We first conclude that the two criminal statutes involved in this case overlap but do not contain identical elements. Secondly, we conclude that the scope of prosecutorial discretion involved in this case does not constitute a *per se* violation of equal protection.

The forgery and credit card crimes statutes are related but they have different elements. It is not true as defendant asserts that the fraudulent use of a credit card necessarily requires a false writing sufficient to allow prosecution under the forgery statute. The applicable provisions of both the forgery and the credit card crimes statutes are quoted below:

"943.38. **Forgery.** (1) Whoever with intent to defraud falsely makes or alters a writing or object of any of the following kinds so that it purports to have been made by another, or at another time, or with different provisions, or by authority of one who did not give such authority, is guilty of a Class C. felony:

"(a) A writing or object where by legal rights or obligations are created, terminated or transferred, or any writing commonly relied upon in business or commercial transactions as evidence of debt or property rights; . . ."

"943.41. **Credit card crimes.** . . . (3) THEFT BY TAKING CARD. (a) No person shall acquire a credit card from the person, possession, custody or control of another without the cardholder's consent or, with knowledge that it has been so acquired, receive the credit card with intent to use it or sell it or to transfer it to a person other than

the issuer. Acquiring a credit card without consent includes obtaining it by conduct defined as statutory theft. . . .

"(b) No person shall receive a credit card that he knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and retain possession thereof with intent to sell it, or to transfer it to a person other than the issuer or the cardholder, or to use it. . . .

"(c) No person other than the issuer shall sell a credit card. No person shall buy a credit card from a person other than the issuer. . . .

"5. FRAUDULENT USE: (A) No person shall, with intent to defraud the issuer, a person or organization providing money, goods, services or anything else of value or any other person. 1) use for the purpose of obtaining money, goods, services or anything else of value, a credit card obtained or retained in violation of sub. (3) . . . , or 2) obtain money, goods, services or anything else of value by representing without the consent of the cardholder that he is the holder of a specified card. . . ."

In examining these statutes, it is apparent that the credit card crimes statute does not refer to forgery of the credit card slip but refers to fraudulent representation and use of credit cards. It is possible to use a credit card without committing a forgery. As was noted in *People v. James,* 178 Colo. 401, 497, P.2d 1256, 1258 (1972), a person could sign for his own name, or not be required to sign at all in some cases involving credit card fraud. In such cases there would be no forgery. It may be true, although there is no statistical information cited for the proposition, that many instances of credit card fraud will involve a forgery as well. Forgery can take many forms and a credit card may be used to accomplish the forgery. *See, State v. Vangen,* 72 Wash.2d 548, 433 P.2d 691 (1967).

We also note that it appears to be the virtually uniform rule either by statute or judicial decision, that the ex-

istence of the credit card crime statute does not impliedly repeal the forgery law nor is it an exclusive codification of all credit card crimes prosecutions. *See, State v. Ulmer,* 21 Ariz. App. 378, 519 P.2d 867 (1974) (statutory provision) ; *People v. James,* 178 Colo. 401, 497 P.2d 1256 (1972) ; *Kindred v. State,* 254 Ind. 127, 258 N.E.2d 411 (1970) ; *Von Hauger v. State,* 252 Ind. 619, 251 N.E.2d 116 (1969) ; *McDuffy v. State,* 6 Md. App. 537, 252 A.2d 270 (1969) ; *People v. Shaw,* 27 Mich. App. 325, 183 N.W.2d 390 (1970) ; *Bence v. State,* 240 So.2d 630 (Miss., 1970) ; *State v. Gledhill,* 67 N.J. 565, 342 A.2d 161 (1975), (statute) ; *Shriver v. Graham,* 366 P.2d 774 (Okla. Crim. 1961), (statute enacted after decision) ; *State v. Dumont,* 3 Or. App. 189, 471 P.2d 847 (1970), (no constitutional violation) ; *State v. Chase,* 15 Ore. App. 369, 515 P.2d 1337 (1973) ; *Jackson v. State,* 463 S.W.2d 182 (Tex. Crim., 1970) ; *Hutchins v. State,* 483 P.2d 519 (Wyo., 1971) ; *Cf. People v. McCollough,* 57 Ill.2d 440, 313 N.E.2d 462 (1974).

It is true that all forgeries involving the use of credit cards could be prosecuted under either statute. However, the established rule is that if the "same act constitutes two offenses, neither of which is the lesser included crime of the other, they constitute multiple crimes and the defendant may be convicted of either or both." *Geitner v. State,* 59 Wis.2d 128, 131, 207 N.W.2d 837 (1973). *Simpson v. United States,* 435 U.S. 6, 11, 98 S. Ct. 909, 55 L. Ed.2d 70 (1978) states that the test under federal law "to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not," *quoting from Blockburger v. United States,* 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932). This same rule is stated in *Melby v. State,* 70 Wis.2d 368, 381, 234 N.W.2d 634 (1975), as applicable in Wisconsin.

Our holding necessarily rejects any contention that the legislature intended to make the credit card crimes statute exclusive. The statutes are not ambiguous and the legislative intent is adequately expressed in sec. 939.65, Stats. 1975, which provides:

"939.65. **Prosecution under more than one section permitted.** If an act forms the basis for a crime punishable under more than one statutory provision, prosecution may proceed under any or all such provisions."

Sec. 939.65, Stats., allows the prosecution of ". . . different crimes having some similar elements but not having identical elements." *State v. Roggensack,* 15 Wis.2d 625, 633, 113 N.W.2d 389 (1962). In *State v. Johnson,* 74 Wis.2d 169, 246 N.W.2d 503 (1976), this Court held that the district attorney has broad discretion in determining whether or not to prosecute in an individual case. In *Harris v. State,* 78 Wis.2d 357, 365, 254 N.W.2d 291 (1977), it was held that from *Johnson* it follows that the prosecuting attorney has the same broad discretion in determining which of several related crimes to charge a defendant within a particular case. *See, A.B.A. Standards Relating to the Prosecution Function,* §3.9 (1970).

Even though the fraudulent use of a credit card may involve a forgery, it need not in all cases, and the prosecutor has the discretion to charge forgery when the facts warrant such a charge. The discretion is not so broad as to be a denial of equal protection. *See, generally,* Comment, *Prosecutorial Discretion In The Initiation Of Criminal Complaints,* 42 S. Cal. L.R. 519, 536–542 (1969); F. Remington & A. Joseph, *Charging, Convicting And Sentencing The Multiple Criminal Offender,* 1961 Wis. L. Rev. 528. *Cf.* A. W. Alschuler, *The Prosecution's Role In Plea Bargaining,* 36 U. Chi. L.R. 50 (1968).

We therefore conclude that the trial court correctly denied the defendant's motion for postconviction relief seeking to vacate the judgment of conviction for forgery. The defendant was properly convicted of forgery, and he was not denied equal protection of the law.

*By the Court.*—Order affirmed.