In re the Paternity of Christian R. H.:

Dustardy H., Appellant,

v.

Bethany H., Respondent.

Court of Appeals

*Nos. 2008AP2587, 2009AP739.*
*Submitted on briefs April 6, 2010.*
*—Decided December 21, 2010.*

2011 WI App 2

(Also reported in 794 N.W.2d 230.)

On behalf of the appellant, the cause was submitted on the briefs of *William J. Hammett* and *Natalie Sturicz-Heiges* of *Hammett, Bellin & Oswald, LLC*, Neenah.

On behalf of the respondent, the cause was submitted on the brief of *Kathleen M. Healy* of *Di Renzo & Bomier, LLC*, Neenah.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. BRUNNER, J. This case emphasizes once again the importance of finality in our justice system. In 2004, the circuit court erroneously granted Dustardy H. parental rights to Christian R. H., a child conceived via artificial insemination by Dustardy's same-sex partner, Bethany H.[1] Four years later, after Dusty and Beth ended their relationship, Beth moved to void the parental rights order under WIS. STAT. § 806.07(1)(d).[2] The circuit court granted Beth's motion. Dusty appeals that 2008 order and a 2009 order denying Dusty's motion for reconsideration.

---

[1] Dustardy and Bethany refer to themselves as "Dusty" and "Beth," respectively, and we will do the same.

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 2. We reverse. An order is void only if the court rendering it lacked subject matter or personal jurisdiction or denied a party due process of law. Here, the circuit court concluded its legal errors in the 2004 parentage order deprived it of subject matter jurisdiction. We conclude a court's subject matter jurisdiction is not affected by its errors of law. Thus, the circuit court erroneously exercised its discretion by voiding its 2004 order.

## BACKGROUND

¶ 3. Dusty and Beth were in a same-sex relationship between October 2001 and November 2005. They participated in a civil commitment ceremony in Hawaii in 2003.[3] That year, the couple decided to have a child via artificial insemination using an anonymous donor's sperm. Beth agreed to carry the child, Christian, who was born on April 20, 2004.

¶ 4. Later that year, Beth and Dusty filed a "Petition for Determination of Parentage." They sought an order pursuant to WIS. STAT. § 891.40 declaring Dusty to be Christian's legal parent. Following a hearing, the circuit court found Dusty had consented to the artificial insemination and concluded she was Christian's parent under § 891.40, and a "de facto parent" under *Holtzman v. Knott*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995).

¶ 5. After Dusty and Beth ended their relationship, they informally agreed to share equal custody of Christian. Then, in 2008, Dusty petitioned the circuit court for an order awarding the parties joint legal custody and shared physical placement. In response,

[3] Wisconsin does not recognize same-sex marriages. *See* WIS. CONST. art. XIII, § 13; WIS. STAT. § 765.001(2). Hence, Dusty and Beth are not married under Wisconsin law.

Beth filed a motion for relief under WIS. STAT. § 806.07(1)(d), asserting the 2004 parentage order was void because the circuit court lacked authority to enter it under both WIS. STAT. § 891.40 and *Holtzman.*

¶ 6. In a 2008 written order, the circuit court granted Beth's motion to void the parentage order. The court concluded it lacked subject matter jurisdiction because "the [*Holtzman*] decision and existing statutory provisions [clearly establish] that Dustardy [H.] could not be a legal parent of the child."

¶ 7. Dusty filed a motion for reconsideration, claiming the circuit court's interpretation of state law violated her and Christian's constitutional rights.[4] The circuit court denied Dusty's motion on January 7, 2009. Dusty appeals the order vacating the 2004 order and the order denying her motion for reconsideration.

¶ 8. After Dusty's intent to appeal became apparent, Beth sought to amend her WIS. STAT. § 806.07 motion to include the catch-all provision set forth in § 806.07(1)(h). The catch-all provision permits the circuit court to relieve a party from an order for any reason that appears just. But a motion under (1)(h) must be brought within a "reasonable time," WIS. STAT. § 806.07(2), and the circuit court concluded Beth's motion was untimely. Beth has not appealed that determination.

## DISCUSSION

¶ 9. Our review is limited to the circuit court's 2008 and 2009 orders, but the nature of this case

---

[4] Dusty raises the same objections on appeal. However, we need not reach them because we agree with Dusty that the circuit court erred by voiding the parentage order. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (cases should be decided on the narrowest possible grounds).

requires that we assess whether the court's 2004 parentage order was void. As we have noted, the order rested on the circuit court's interpretation of the artificial insemination statute, Wis. Stat. § 891.40, and *Holtzman*. Our reading of both authorities indicates the circuit court clearly erred in 2004.

██

¶ 10. Wisconsin's artificial insemination statute creates a presumption that a husband whose wife is artificially inseminated with semen donated by another man is the "natural father" of the child.[5] Wis. Stat. § 891.40(1). For obvious reasons, a same-sex partner of the child's biological mother can never receive the presumption of parenthood under § 891.40(1). The presumption operates only in favor of a male, as evidenced by the statute's use of the words "husband" and "father." Further, same-sex couples can never satisfy the marital relationship described by the statute. *See* Wis. Const. art. XIII, § 13 ("Only a marriage between one man and one woman shall be valid or recognized as a marriage in

---

[5] The full text of Wis. Stat. § 891.40(1) is as follows:

**891.40 Artificial insemination. (1)** If, under the supervision of a licensed physician and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband of the mother at the time of the conception of the child shall be the natural father of a child conceived. The husband's consent must be in writing and signed by him and his wife. The physician shall certify their signatures and the date of the insemination, and shall file the husband's consent with the department of health services, where it shall be kept confidential and in a sealed file except as provided in s. 46.03 (7) (bm). However, the physician's failure to file the consent form does not affect the legal status of father and child. All papers and records pertaining to the insemination, whether part of the permanent record of a court or of a file held by the supervising physician or elsewhere, may be inspected only upon an order of the court for good cause shown.

this state."). The circuit court's most recent orders correctly conclude that it erred in 2004 by granting Dusty parental rights under § 891.40(1).

¶ 11. Curiously, the circuit court cited *Holtzman* as an alternative basis for its parentage order. In that case, the circuit court dismissed Sandra Holtzman's petition seeking custody and visitation rights to the biological child of her same-sex partner, Elsbeth Knott.[6] *Holtzman*, 193 Wis. 2d at 657. The supreme court first determined that the circuit court properly dismissed Holtzman's custody petition because she failed to raise a triable issue regarding Knott's fitness or ability to care for the child and failed to demonstrate compelling circumstances that would warrant a custody transfer. *Id.* at 665–66.

¶ 12. The confusion in our case stems, however, from the supreme court's discussion of Holtzman's visitation petition. Although the court concluded Holtzman's visitation request lacked a statutory basis, it determined a circuit court has common-law authority to award equitable visitation in a child's best interest "if the petitioner first proves that he or she has a parent-like relationship with the child and [further proves] that a significant triggering event justifies state intervention in the child's relationship with a biological or adoptive parent." *Id.* at 658. The court then described the four component elements of the "parent-like relationship" requirement:

> (1) that the biological or adoptive parent consented to, and fostered, the petitioner's formation and establish-

---

[6] Like the parties in this case, the parties in *Holtzman v. Knott*, 193 Wis. 2d 649, 659–60, 533 N.W.2d 419 (1995), decided to conceive a child by having one partner artificially inseminated with sperm from an anonymous donor.

ment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed obligations of parenthood by taking significant responsibility for the child's care, education and development, including contributing towards the child's support, without expectation of financial compensation; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship parental in nature.

*Id.* at 658–59 (footnotes omitted).

██

¶ 13. Here, the circuit court erroneously extracted the "parent-like relationship" prong from the supreme court's equitable visitation standard and used it as a stand-alone test to confer parental rights. Parentage may be established in one of three ways: by initiating a paternity action under Wis. STAT. § 767.80, by petitioning for adoption under the Children's Code, or by virtue of the presumption established by the artificial insemination statute. *See* Wis. STAT. § 48.02(13) (defining a "parent"). While a circuit court possesses common-law authority to order visitation, it has no authority outside of the Wisconsin statutes to confer parental rights. *See Georgina G. v. Terry M.*, 184 Wis. 2d 492, 506, 516 N.W.2d 678 (1994) ("Adoption proceedings, unknown at common law, are of statutory origin and the essential statutory requirements must be substantially met to validate the proceedings."); *State v. M.T.D.*, 132 Wis. 2d 262, 263, 392 N.W.2d 97 (Ct. App. 1986) (paternity proceedings are purely statutory). Accordingly, the circuit court erred in 2004 by reaching beyond the statutes to construct its own basis for conferring parental rights.[7]

---

[7] The circuit court's "de facto parent" test is especially problematic because visitation law and parentage law serve

¶ 14. We next address whether the circuit court's erroneous legal conclusion rendered its parentage order void under WIS. STAT. § 806.07(1)(d). We review a circuit court's decision to grant relief under WIS. STAT. § 806.07 for an erroneous exercise of discretion. *Schauer v. DeNeveu Homeowner's Ass'n*, 194 Wis. 2d 62, 70–71, 533 N.W.2d 470 (1995). We will not reverse a circuit court's decision if it examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion. *Lee v. GEICO Indem. Co.*, 2009 WI App 168, ¶ 16, 321 Wis. 2d 698, 776 N.W.2d 622. Whether the circuit court properly interpreted statutory language is, however, a question of law. *DOR v. River City Refuse Removal, Inc.*, 2007 WI 27, ¶ 26, 299 Wis. 2d 561, 729 N.W.2d 396.

■

¶ 15. An order is not "void" under WIS. STAT. § 806.07(1)(d) unless the court rendering it lacked subject matter or personal jurisdiction or denied a party due process. *Wengerd v. Rinehart*, 114 Wis. 2d 575, 578–79, 338 N.W.2d 861 (Ct. App. 1983). This interpre-

---

distinct purposes. Visitation law is concerned with identifying the triggering events that justify state interference with a parent's right to raise a child, *Holtzman*, 193 Wis. 2d at 668, while parentage law is designed to identify and legally determine a child's parent, usually the father. The "parent-like relationship" test, which was designed for the former purpose, does not translate well as a method to achieve the latter. Indeed, using that test to confer parental rights would undoubtedly cause legal chaos. Surely many individuals have formed a "parent-like relationship" with another person's child, but that does not mean they should possess the parent's "rights, powers, privileges, immunities, duties and obligations" by virtue of that relationship. *See* WIS. STAT. § 48.40 (describing effect of severing parental rights).

tation of § 806.07(1)(d) mirrors that of the federal rule, FED. R. CIV. P. 60(b)(4), upon which our statute was based.[8] *Wengerd*, 114 Wis. 2d at 578–79. Here, Dusty claims the circuit court erroneously concluded it lacked subject matter jurisdiction in 2004.

¶ 16. Article VII, section 8 of the Wisconsin Constitution states, "Except as otherwise provided by law, the circuit court shall have original jurisdiction in all matters civil and criminal within this state." As our supreme court has repeatedly noted, this jurisdictional grant is a broad one: "no circuit court is without subject matter jurisdiction to entertain actions of any nature whatsoever."[9] *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 8, 273 Wis. 2d 76, 681 N.W.2d 190 (quotation omitted); *see also State v. Kywanda F.*, 200 Wis. 2d 26, 33, 546 N.W.2d 440 (1996) ("[A] circuit court has subject matter jurisdiction, conferred by our state constitution, to consider and determine any type of

_____

[8] Although WIS. STAT. § 806.07 is "substantially equivalent" to FED. R. CIV. P. 60(b), Judicial Council Committee's Note, 1974, WIS. STAT. Ann. § 806.07 (West 1994), it does not appear that Wisconsin has adopted the federal rule's egregiousness requirement, which states that courts may treat a judgment as void only if the jurisdictional error involves a "clear usurpation of judicial power, where the court wrongfully extends its jurisdiction beyond the scope of its authority," *United States v. Tittjung*, 235 F.3d 330, 335 (7th Cir. 2000).

[9] As the court noted in *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶ 8 n.2, 273 Wis. 2d 76, 681 N.W.2d 190, federal law may confer exclusive jurisdiction over certain subject matter to the federal courts, precluding state court jurisdiction in those areas by operation of the Supremacy Clause. In addition, we have repeatedly held that a complaint's failure to charge an offense known to law is a jurisdictional defect that deprives a circuit court of criminal subject matter jurisdiction. *See, e.g., State v. Schroeder*, 224 Wis. 2d 706, 714, 593 N.W.2d 76 (Ct. App. 1999).

action."). Because subject matter jurisdiction is conferred by the Constitution and not by act of the legislature, it cannot be curtailed by state statutes. *Village of Trempealeau*, 273 Wis. 2d 76, ¶ 8.

██

¶ 17. A circuit court possesses subject matter jurisdiction to entertain a matter even if its ultimate decision on the issue reflects an erroneous view of the law. *See Mack v. State*, 93 Wis. 2d 287, 295, 286 N.W.2d 563 (1980). For example, a conviction based on a defective criminal complaint is not void because the circuit court still possesses subject matter jurisdiction to render its judgment. *Id.* "Even where the error in the law or proceedings is fatal to the prosecution, the circuit court has the power to inquire into the sufficiency of the charges before the court." *Id.* Accordingly, the circuit court's erroneous legal conclusion does not render its 2004 parentage order void for purposes of WIS. STAT. § 806.07(1)(d).

¶ 18. This interpretation of WIS. STAT. § 806.07(1)(d) maintains the judiciary's longstanding emphasis on the principle of finality. WISCONSIN STAT. § 806.07 strikes a balance between the judiciary's interest in achieving fair resolutions of disputes and the policy favoring finality of judgments. *Larry v. Harris*, 2008 WI 81, ¶ 18, 311 Wis. 2d 326, 752 N.W.2d 279. At some point, the former must give way to the latter. Federal courts, often raising finality concerns, have customarily denied relief under FED. R. CIV. P. 60(b)(4) where an erroneous legal conclusion forms the sole basis for the request.[10] *See* 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER

---

[10] Federal cases may be used for the purpose of interpreting WIS. STAT. § 806.07. *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 542, 363 N.W.2d 419 (1985).

& MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2862 n.8 (2d ed. Supp. 2010) (collecting cases).

¶ 19. The federal rule is consistent with Wisconsin law. In *Reading v. Reading*, 268 Wis. 56, 60, 66 N.W.2d 753 (1954), our supreme court rejected an attempt to attack a divorce judgment more than six years after its entry, concluding that an erroneous determination of law or fact does not render a judgment void. And multiple cases decided under earlier versions of the relief-from-judgment statute have held that a court's legal error does not provide a ground for relief. *See Sikora v. Jursik*, 38 Wis. 2d 305, 308–09, 156 N.W.2d 489 (1968); *Gustin v. Coloma State Bank*, 229 Wis. 475, 477–78, 282 N.W. 568 (1938).

¶ 20. Since *Sikora* and *Gustin* were decided, the relief-from-judgment statute has been substantially amended. Until 1976, the statute provided relief only from an order obtained through mistake, inadvertence, surprise or excusable neglect.[11] *See* WIS. STAT. § 269.46 (1973). Thus, it was certainly true at the time *Sikora* and *Gustin* were decided that the statute did not provide relief from an erroneous order. As we shall explain, the current statute does provide relief for a court's legal errors. However, a party seeking such relief must use a provision other than that relating to void judgments or orders.

¶ 21. WISCONSIN STAT. § 806.07 now permits a court to relieve a party for "any other reasons justifying relief from the operation of the judgment." WIS. STAT. § 806.07(1)(h). This catch-all provision permits the court "to correct erroneous conclusions of law and to address issues not properly dealt with under the origi-

[11] The current version of the statute provides relief on the same grounds. *See* WIS. STAT. § 806.07(1)(a).

nal judgment." *Teubel v. Prime Dev., Inc.*, 2002 WI App 26, ¶ 19, 249 Wis. 2d 743, 641 N.W.2d 461. Beth did seek relief under paragraph(1)(h), but her request came too late. Motions under the catch-all provision must be brought within a reasonable time, WIS. STAT. § 806.07(2), and Beth has not appealed the circuit court's conclusion that her motion was untimely.[12]

¶ 22. Of course, parties adversely affected by an erroneous judgment may also obtain relief through direct appeal. *See* WIS. STAT. § 808.03; *Reading*, 268 Wis. at 60–61. Generally, appeals must be initiated within ninety days from the date a final judgment or order is entered. WIS. STAT. § 808.04(1). Beth's opportunity for direct appeal from the 2004 order has long passed.

¶ 23. The circuit court correctly determined that it erred by granting Dusty parental rights in 2004, but erroneously exercised its discretion under WIS. STAT. § 806.07 because its order was not void. Accordingly, we reverse and remand for further proceedings on Dusty's custody and placement petition.

*By the Court.*—Orders reversed and cause remanded with directions.

---

[12] We note that WIS. STAT. § 806.07(2)'s "reasonable time" requirement does not apply to motions for relief from void judgments. *Kohler Co. v. DILHR*, 81 Wis. 2d 11, 25, 259 N.W.2d 695 (1977).